FRANK J. KIMBALL *vs.* ALFRED S. HAYES & others.

Suffolk.    September 3, 1908, — October 19, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Agency. Broker.*

The general rule that in the absence of a special agreement a principal by employing a broker to secure a customer for him does not deprive himself of the right to get a customer personally or through another broker, which has been applied in cases where a real estate broker was employed, applies equally where a note broker is employed to place a loan.

In a suit in equity to establish, and have paid from equitable assets, an alleged debt of the defendants to the plaintiff of $50,000 for services in procuring for the defendants a loan of $500,000 under an agreement in writing, or to recover the sum of $50,000 as damages for preventing the plaintiff from obtaining the loan by breaking the contract in taking a loan from another person, it appeared that the defendants desired the loan for the purpose of buying the stock of a certain steamship company, that in order to be of any benefit to the defendants for that purpose the loan would have to be placed before June 1 of the year then current and that this was known to the plaintiff, that on May 2 the agreement in writing was made between the plaintiff and the defendants, which stated that the defendants had " retained " the plaintiff (who was a member of the bar of New York) " to negotiate for them the obtaining of the aforesaid sum of $500,000, and hereby agree to pay to him as and for his services therefor the sum of $50,000, out of the proceeds of said $500,000, but not otherwise, and the . . . [plaintiff] agrees to accept the same in payment therefor." In anticipation of this contract, the plaintiff in March had opened negotiations with a certain trust company for a loan of $500,000 to the defendants. After the making of the contract, he continued his efforts to procure the loan from the trust company, with the result that the matter was to be reported upon at a meeting of the executive committee of the trust company to be held on May 29. On or before that day the defendants accepted another offer of a loan of $325,000. Before one o'clock on May 29 one of the defendants, acting for all of them, asked the plaintiff by telephone whether he had received any word from the trust company. To this the plaintiff answered that he had not, that the matter was to come up at four o'clock on that afternoon. The defendant, acting for all the defendants, then replied that he had decided to accept another offer. The contract contained no express provision that the employment of the plaintiff to procure the loan was to be exclusive. *Held,* that the plaintiff was employed as a broker and that there was nothing to take the contract out of the general rule that in the absence of a special agreement a principal by employing a broker does not deprive himself of the right to get a customer personally or through another broker; and that, even if the general rule were that as a matter of implication a broker has a reasonable time in which his right to find a customer is exclusive of other brokers and of his principal, a provision that the plaintiff was to have such an exclusive

right until and including May 29 could not have been implied in the present case; therefore, that the defendants in obtaining the necessary money elsewhere violated no duty which they owed to the plaintiff, and that the bill must be dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court on September 29, 1903, under R. L. c. 159, § 3, cl. 7, to establish, and have paid from equitable assets, an alleged debt of the defendants to the plaintiff of $50,000 for services in procuring a loan of $500,000 under an agreement in writing, which is quoted in full in the opinion, or to recover the sum of $50,000 as damages for preventing the plaintiff from obtaining the loan by breaking the contract in taking a loan from another source.

On December 14, 1903, the case was heard by *Braley,* J., who made certain findings of fact, some of which are quoted in the opinion. On January 20, 1904, he made an interlocutory decree sending the case to a master, from which both the plaintiff and the defendants appealed.

On April 25, 1905, there was an order of reference to a special master to find the facts as to the damages sustained by the plaintiff by reason of the breach of contract set forth in the bill, and to ascertain the amount of such damages. The special master filed a report to which the parties filed exceptions. Decrees were made overruling the exceptions of the plaintiff and those of the defendants and confirming the master's report.

On January 20, 1908, the case came on to be heard by *Sheldon,* J., upon the application of the plaintiff for a final decree. The justice, after hearing the parties, reserved the case for determination by the full court, such final decree to be entered as should be in accordance with the law.

The case was submitted on briefs.

*C. W. Bartlett & E. R. Anderson,* for the plaintiff.

*A. S. Hayes & W. S. Bangs,* for the defendants Hayes and Gale.

LORING, J. Before May 2, 1903, the defendants Hayes, Gale, Daggett and Pye (who for convenience may be spoken of as the defendants) had joined together for the purpose of buying the stock of the Canada Atlantic and Plant Steamship Company, Limited, a foreign corporation owning a steamboat running apparently between Boston, Nova Scotia and Cape Breton.

To pay for the stock (if they were successful in their negotiations for its purchase) they had to borrow a large sum of money, and on May 2, 1903, they made a written contract with the plaintiff (which is the foundation of this suit) in the following words:

" Whereas : Alfred S. Hayes, of Boston, Massachusetts and his associates are desirous of purchasing the charter, goodwill franchises, leases, the Steamship Halifax, now plying between Boston, Massachusetts and Halifax, Nova Scotia, and all the personal and real estate appertaining to the business now carried on and prosecuted by the Canada Atlantic and Plant Steamship Co. Limited; incorporated under the laws of Canada and having a place of business at Boston, Massachusetts, aforesaid, Halifax, Nova Scotia ; Charlottestown, Prince Edwards Island ; Hawkerbury, Cape Breton or elsewhere ; and desires to obtain the sum of $500,000 cash for the purchase and carrying on of the aforesaid business and property, the same to be secured by a bond issue of the aforesaid company.

" Now Therefore This Agreement Witnesseth that the aforesaid Hayes and his associates, of the first part, have hereby retained F. J. Kimball, of 116 Nassau Street, New York City, of the second part, to negotiate for them the obtaining of the aforesaid sum of $500,000, and hereby agree to pay to him as and for his services therefor the sum of $50,000, out of the proceeds of said $500,000, but not otherwise, and the said F. J. Kimball hereby agrees to accept the same in payment therefor.

" It is Also Further Agreed by the first parties hereto that the said sum of $50,000 shall be deducted from the first payment, made on account of the said $500,000 paid by any person or persons, corporation or corporations, to the said parties of the first part, by or through the efforts directly or indirectly of said F. J. Kimball, in the premises herein, and at the time said first payment shall be made.

" It is Also Further Agreed by the first parties hereto that an agreement bearing even date herewith, providing for and covering Underwriters fees on aforesaid loan of $500,000 is in addition to an[d] exclusive of the aforesaid sum of $50,000 hereinbefore mentioned and agreed upon.

" The Said Alfred S. Hayes for himself and for his associates hereinbefore named specifically states and agrees that he has full power and authority for and in their behalf to enter into this agreement on their behalf.

" In Witness Whereof the parties hereto have hereunto set their hands and seals this second day of May, A. D. 1903."

It is alleged by the plaintiff in his bill that he was a member of the bar of the City and County of New York. That doubtless is the reason why it is stated in the contract that he was retained.

In anticipation of some contract being made with the defendants, the plaintiff in March had opened negotiations with a New Jersey Trust Company for the loan of half a million dollars to the defendants. After the formal contract here in question was made the plaintiff continued his efforts to procure the loan from the trust company. The matter of granting the loan came before the executive committee of the trust company on May 22, and was referred to one Kean to look into and report upon at an adjourned meeting of the committee, to be held on May 29.

The single justice made these findings: "Apparently being uncertain as to whether this loan would be successful or not, some time prior to May 29, the defendant Hayes, acting for himself and his associates, accepted another proposition for a loan of three hundred and twenty-five thousand dollars. . . . And I am satisfied that the last loan was placed by the defendants on or before May 29, 1903." On May 29 "he [Hayes] had an interview with the plaintiff by telephone." Hayes asked the plaintiff whether he had received any word from the trust company; to this the plaintiff answered that he had not, that the matter was to come up at four o'clock on that afternoon. Hayes then said that he had decided " to take Boston money." It appears from some things said at this interview which are not material here, that this talk over the telephone took place before one o'clock on Friday, May 29.

The plaintiff contends that in preventing him from obtaining the loan the defendants broke their contract with him and are liable to him for the damages suffered by his not being allowed to perform his contract.

The defendants' contention is that the services to be rendered by the plaintiff were those of a broker and that there is nothing in the contract here in question to take the case out of the general rule that in the absence of a special agreement a broker's authority to obtain a customer for his principal can be revoked at any time before a customer has been obtained, and that in such a case the principal is at liberty to complete a trade for the thing the broker was employed to get through another broker, or directly with a customer without the intervention of any broker.

The general rule that in the absence of a special agreement a principal by employing a broker to secure a customer for him does not deprive himself of the right to get a customer himself or through another broker, is settled. *Cadigan* v. *Crabtree*, 179 Mass. 474; *Cadigan* v. *Crabtree*, 186 Mass. 7, 12.

These cases are cases where the broker employed was a real estate broker. But the rule is the same in case of a note broker employed to place a loan, that is, to find a customer for the note of his principal, as it is in case of a real estate broker employed to sell the principal's real estate, that is, to find a customer to buy his principal's land. The fact that the plaintiff seems to be a member of the bar is of no consequence. He was employed to perform a broker's services and his rights depend upon the service he undertook. See *Miller* v. *Haskell*, 179 Mass. 312. To support this contention of the plaintiff it is incumbent on him to make out that by the written contract between the defendants and him, the defendants either made him their exclusive agent to place the loan in question, or — what is tantamount to that agreement — provided that he should have until and including May 29 to see whether he could procure it.

There is no express provision to that effect to be found in the contract. To succeed, therefore, the plaintiff must make out that such a provision is to be read into the contract by implication.

The only ground for implying such an agreement on the part of the defendants is the hardship to which the plaintiff is put if he is deprived of the fruit of his two to three months' work when he is apparently on the eve of success, as he was when the defendants revoked his authority on the morning of May 29 and

took the loan offered them in Boston. That is looking at the matter from the plaintiff's point of view only, and is a hardship that every one incurs who undertakes to perform the services of a broker without a special agreement.

But the situation in the case at bar must be looked at from the point of view of the defendants as well as from that of the plaintiff. In the case at bar the single justice found "that the situation was such that, in order to be of any benefit to the defendants, such a loan would have to be placed on or before June 1, 1903, and that this was so understood by Kimball."

The situation then was this: On May 2 the defendants were conducting negotiations for the purchase of property, which, if successful, would make it necessary for them to borrow $450,000. Not only that, but to be of any benefit to the defendants they had to have the $450,000 actually in hand on the first day of June. And this was known to the plaintiff as well as to the defendants. It was under these circumstances that the defendants employed the plaintiff as a broker to place the loan. The plaintiff, by accepting that employment, came under an obligation to use his best endeavors to place the loan. But the obligation assumed by him went no further. He did not guarantee that he would be successful. He did not agree that the money would be forthcoming on June 1, when, if ever, it was to be of any benefit to his principals. It would have been an act of incredible stupidity on the defendants' part if under these circumstances they had agreed that the plaintiff alone should have the right to place the loan up to and including May 29. That is to say, that they should not be at liberty to provide for the contingency of the plaintiff's failure and must stake their enterprise on the plaintiff's best endeavors being successful. For that is what it comes to. They could not honorably open negotiations with others for the loan without disclosing the plaintiff's employment; and if they disclosed his employment and stated that they should want the loan on June 1 if he failed on May 29, they could not hope that their proposition would be entertained. It is incredible that they should have entered into a contract with the plaintiff which left them but two days, or, if the day on which the money had to be paid by them is counted, three days, in which to raise $450,000. Had the general rule been that as matter of implica-

tion a broker has a reasonable time in which his right to find a customer is exclusive of other brokers and of his principal, a provision that the plaintiff in the case at bar was to have such an exclusive right until and including May 29 could not have been implied in the contract now under consideration.

It follows that the defendants in obtaining the necessary money elsewhere violated no duty which they owed to the plaintiff; and the entry must be

*Bill dismissed.*