GREENE, Appellant, vs. AMERICAN MALTING COMPANY, Respondent.

*March 14—April 8, 1913.*

*Change of venue: Prejudice of judge: When application must be made: Milwaukee circuit court: Change of presiding judge: Jurisdiction: Waiver: Parol evidence affecting contracts: Real-estate brokers: Exclusive agency: Sale by owner: Right to commission.*

1. The rule that after a trial has been commenced it is too late to apply for a change of venue under sec. 2625, Stats., does not apply where a trial has been initiated and discontinued, making a second initiation necessary, and the application for a change of venue is made before the latter occurs.

2. A mere change of the presiding judge in the circuit court for Milwaukee county is not a change of venue.

3. Even if a change in the presiding judge affected the jurisdiction of said court over the parties and the particular controversy, any objection on that ground was waived by voluntary submission to trial.

4. Mere conversations and negotiations which are presumed to have been embodied in a subsequent written contract are not admissible in evidence when it is sought thereby, not to explain the contract, but to vary it.

5. The owner of land who gives to a broker the exclusive agency to find a purchaser may himself sell the land to a person with whom the broker has no connection and, unless it be specifically so agreed, will not be liable to the broker for any commission on such sale.

6. So *held* where the terms of the agency were shown by a letter from the owner to the broker, saying, "We agree with you that it is better that the sale of the property shall be exclusively in the hands of one broker, and you are the only person who is authorized to handle this property."

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Action to recover compensation upon a contract of agency to find a purchaser for real estate.

The issue tried was as to whether plaintiff acquired such exclusive authority as to disable the owner from selling his property without being liable to plaintiff for a commission. Plaintiff, as the result of some conversation with defendant's agent, wrote defendant under date of January 8, 1909, soliciting the agency to procure a purchaser for the latter's real estate and suggesting preference for an exclusive agency so as to be in full command of the situation, that it would be a mistake to have several real-estate men working on the proposition, and that he would take the agency on a two per cent. basis. That was replied to and resulted in a second meeting with an agent of defendant in respect to the matter January 17, 1909. Thereafter, under date of January 23, 1909, defendant wrote plaintiff:

"Referring to our conversation in Milwaukee on the 17th inst., I want to say that you are authorized to negotiate for

the sale of the plant owned by us in Milwaukee, known as the plant of the Milwaukee Malt & Grain Co.

"Referring to your letter of the 8th inst., we agree with you that it is better that the sale of the property shall be exclusively in the hands of one broker, and you are the only person who is authorized to handle this property.

"In the event of sale by you we are willing to pay you a commission of two per cent. on the sale price.

"In connection with the above authority, we hereby reserve the right to end this agency at any time upon giving you fifteen (15) days' written notice, on the understanding, however, that the above mentioned commission shall be paid to you not only in the event of sale during the continuance of this agency, but also after its termination, provided the sale is the direct result of your efforts put forth prior to such termination."

That letter was transmitted with another expressing the idea that it was "exactly according to a previous verbal agreement" made between plaintiff and defendant's agent. Plaintiff answered under date of January 29, 1909, accepting the proposition aforesaid.

The court refused to permit the letter of January 8th to be received in evidence, or to permit evidence of what passed between plaintiff and the agent on the 17th day of January, 1909.

After the lapse of nearly a year, plaintiff having failed to find a purchaser for the property, defendant sold the same for $75,000, without aid on the part of plaintiff.

At the close of the evidence the court directed a verdict in defendant's favor.

For the appellant there was a brief by *Carl B. Rix* and *Paul A. Rix,* and oral argument by *Carl B. Rix.* To the point that the plaintiff was given the exclusive agency and the owner was thereby precluded from selling during the agency, they cited *Darrow v. Harlow,* 21 Wis. 302; *Hunter v. Wenatche L. Co.* 50 Wash. 438, 97 Pac. 494; *Metcalfe v. Kent,* 104 Iowa, 487, 73 N. W. 1037; *Novakovich v. Union*

*T. Co.* 89 Ark. 412, 117 S. W. 246; *Fairchild v. Rogers,* 32 Minn. 269, 20 N. W. 191; *Green v. Cole,* 127 Mo. 587, 30 S. W. 135; *Stringfellow v. Powers,* 4 Tex. Civ. App. 199, 23 S. W. 313; *Blumenthal & Co. v. Bridges,* 91 Ark. 212, 120 S. W. 974, 24 L. R. A. N. s. 279.

*Julius E. Roehr,* for the respondent, as to plaintiff's right to commission, cited, besides cases cited in the opinion, *Dole v. Sherwood,* 41 Minn. 535, 43 N. W. 569, 5 L. R. A. 720; *Metzen v. Wyatt,* 41 Ill. App. 487; *Stewart v. Murray,* 92 Ind. 543, 47 Am. Rep. 167; *Weaver v. Snively,* 73 Neb. 35, 102 N. W. 77; *Chilton v. Butler,* 1 E. D. Smith (N. Y.) 150; *McClave v. Paine,* 49 N. Y. 561, 10 Am. Rep. 431; *Ettinghoff v. Horowitz,* 115 App. Div. 571, 100 N. Y. Supp. 1002; *Mordecai v. Jacobi,* 12 Rich. Law, 547; *Ingold v. Symonds,* 134 Iowa, 206, 111 N. W. 802; *Turner v. Baker,* 225 Pa. St. 359, 74 Atl. 172; *Gilbert v. Coons,* 37 Ill. App. 448; *Tracy v. Radeke,* 141 Iowa, 167, 119 N. W. 525; *Waterman v. Boltinghouse,* 82 Cal. 659, 23 Pac. 195; *Schultz v. Griffin,* 5 Misc. 499, 26 N. Y. Supp. 713; *Levy v. Rothe,* 17 Misc. 402, 39 N. Y. Supp. 1057; *Moses v. Bierling,* 31 N. Y. 462; *Metcalfe v. Kent,* 104 Iowa, 487, 73 N. W. 1037; *Wright v. Beach,* 82 Mich. 469, 46 N. W. 673; *Lapham v. Flint,* 86 Minn. 376, 90 N. W. 780; *Hoadley v. Savings Bank,* 71 Conn. 599, 42 Atl. 667, 44 L. R. A. 321 and note.

MARSHALL, J.    Apart from the errors claimed to have been committed on the trial, it is suggested that there was jurisdictional error, in that after the case had been partially tried the proceedings were discontinued with the purpose of commencing the trial anew, and that, as the court was about to do so, an affidavit of prejudice was recognized by assigning the cause for trial in the same court before another judge. That is referred to as a change of venue upon an application not seasonably made.    There are three good answers thereto. (1) The commencement of the trial having been rendered

entirely ineffectual, the cause stood the same as before. At any time before entering upon the second trial, it was competent to apply for a change of venue. The rule that after a trial shall have been commenced it is too late to apply for a change of venue under sec. 2625, Stats., *Swineford v. Pomeroy,* 16 Wis. 553; *State ex rel. Winchell v. Circuit Court,* 116 Wis. 253, 93 N. W. 16, does not apply where a trial has been initiated and discontinued, making a second initiation necessary, and an application for a change of venue is made before the latter occurs. (2) There was no change of venue granted. A mere change of presiding judges in the same court is not a change of venue. Either one of the circuit judges for Milwaukee county was competent to preside at the trial. The assignment to a particular judge did not create a disability as to any other. (3) The trial was entered upon and proceeded to judgment without objection. The court, as presided over by the judge in question, had jurisdiction of such subjects. The voluntary submission to the trial gave it jurisdiction of the parties and of the particular controversy. If it did not have the same before, exercise thereof was not such a jurisdictional matter as to be unwaivable.

Complaint is made because the conversation and letter referred to in the letter of January 23, 1909, were excluded. The offer was made for the purpose of explaining the language in respect to the employment to obtain a purchaser being "exclusively in the hands of one broker" and plaintiff being "the only person authorized to handle the property." We are unable to discover any purpose in the inquiries except to produce in evidence the mere conversations and negotiations which must be presumed to have been embodied in the contract made by the letter of January 23, 1909, and the acceptance thereof. There is no term of double meaning in the letter. Moreover, it was approved by plaintiff in face of the accompanying letter stating that it was "exactly" in accordance with the conversation of January 17, 1909. That reinforces the presumption aforesaid. It is evident from that

and the letter of January 8, 1909, which appears in the record, that the evidence was not sought to explain the contract, but to vary it. The circumstances are not of a case of the use of a word or phrase of double meaning and conversations leading up thereto, indicating the particular use the parties had in mind. In the excluded letter "an exclusive agency" was the thing sought upon the ground that it would "be a mistake to have several real-estate men" trying to sell the property at the same time. Conformably thereto, the letter forming the vital part of the contract on defendant's side, used the language "We agree with you that it is better that the sale of the property shall be exclusively in the hands of one broker, and you are the only person who is authorized to handle this property." It really seems that the exclusion of the evidence, especially the letter of January 8, 1909, was rather favorable than unfavorable to appellant. That letter would have made it unmistakable, if not so otherwise, that what appellant was after was an appointment as exclusive agent to find a purchaser for the property, instead of there being "several real-estate men" working therefor at the same time.

So the case comes down to this: If the owner of property appoints another his exclusive agent to negotiate for sale of a particular piece of property, does he thereby disable himself from selling it to a third person, with whom such other has no connection, free from any claim for compensation by such other?

The answer to the stated proposition must be in the negative by, at least, the great weight of authorities. The precise question does not appear to have been heretofore presented here. The Iowa court in *Ingold v. Symonds,* 125 Iowa, 82, 99 N. W. 713, cited to our attention by counsel for respondent, does not state the condition of the authorities much, if any, too strong in these words:

"The right of an owner to sell his own property is an implied condition of every contract of agency, and, unless expressly negatived, will prevail. The commission is payable

only in case of the agent's finding a purchaser and the agent takes his chances on the owner himself making a sale. The only effect of such a contract [an exclusive agency contract] as the one before us is to forbid the owner from placing the property in the hands of any other agent. . . . This view is sustained by the unbroken voice of authority."

The principle above stated may be found applied in many jurisdictions. The adjudications cited by respondent's counsel are good examples and the following are among the best of them: *Baars v. Hyland,* 65 Minn. 150, 67 N. W. 1148; *Mott v. Ferguson,* 92 Minn. 201, 99 N. W. 804; *Armstrong v. Wann,* 29 Minn. 126, 12 N. W. 345; *Putnam v. How,* 39 Minn. 363, 40 N. W. 258; *Golden Gate P. Co. v. Farmers' Union,* 55 Cal. 606; *Hungerford v. Hicks,* 39 Conn. 259; *Kimball v. Hayes,* 199 Mass. 516, 85 N. E. 875.

A distinction is made in some cases between exclusive power to sell and exclusive agency to procure a sale or find a purchaser; in others between an exclusive agency and an agency for a particular time, where, within it, the agent, proceeding in good faith, finds a purchaser; between a sale, as in this case, without any interference on the part of the agent, and a sale to a person to whose attention the property is brought by the agent. Here there was the ordinary exclusive agency to find a purchaser, and after long delay, the owner made a sale without the agent being connected with it in any way. In such circumstances the agent is not entitled to commission.

*By the Court.*—The judgment is affirmed.