ROBERTS, Respondent, vs. HARRINGTON, Appellant.

*November 6—December 3, 1918.*

*Real-estate brokers: Contract for "exclusive sale:" Construction.*

> Where no consideration was paid by a real-estate broker for a contract giving him for a certain time the "exclusive sale" of a farm, and he incurred no obligation to do anything, such contract, while it precluded the owner from giving any one else the power to sell, did not preclude a sale by the owner himself, during the period named, in the absence of clear and unequivocal language negativing such right on his part. KERWIN and ESCHWEILER, JJ., dissent.

APPEAL from a judgment of the circuit court for Dane county: E. B. BELDEN, Judge.  *Reversed.*

Action to recover a two per cent. commission for the sale of defendant's farm of 185 acres, founded upon a written

contract stating that defendant "gives to party of the first part [plaintiff] the exclusive sale of" his farm upon specified terms for a period of four months from December 13, 1916, the date of the contract. On April 3, 1917, defendant sold the farm to one Schoeneman for $7.50 per acre less than the price specified in the contract and without any knowledge that plaintiff had endeavored to interest Schoeneman in the purchase of the farm. At the close of the testimony the court directed a verdict for plaintiff for $420, and from a judgment entered accordingly the defendant appealed.

For the appellant there was a brief by *Hill & Spohn* of Madison, and oral argument by *W. H. Spohn.*

For the respondent there was a brief by *Gilbert & Ela* of Madison, and oral argument by *F. L. Gilbert.*

VINJE, J. The evidence shows without dispute that plaintiff had repeatedly sought to interest Schoeneman, among others, in the purchase of the farm and had gone to some expense to secure a purchaser upon the terms specified. It also likewise shows that he had been unable to secure a purchaser, and that neither he nor Schoeneman nor any one else had informed the defendant that plaintiff had endeavored to induce Schoeneman to buy the farm. The sale was therefore made by defendant to a person to whom he believed and had reason to believe he had a perfect right to sell without incurring any liability for a commission, unless the contract giving plaintiff the "exclusive sale" of the farm for four months prevented him from making a sale during the life of the contract. It is well settled that the giving of an *exclusive agency* to sell real estate does not preclude the owner from selling within the life of the contract to one who he has reason to believe has not been procured by the agent. *Greene v. American M. Co.* 153 Wis. 216 (140 N. W. 1130), and cases cited on p. 222; *Kimball v. Hayes,* 199 Mass. 516, 85 N. E. 875.

Does a contract giving the "exclusive sale" of real estate to another preclude the owner from selling while the con-

tract is in force? It is true the words will technically bear
that construction. But when we stop to reflect upon the sit-
uation of the parties and the object sought to be attained as
well as the content of this contract, we should not give it
that construction unless the language is so clear and unam-
biguous as not to bear any other. The owner wants to sell
his real estate. To that end he calls to his assistance one
engaged in the real-estate business—the broker, who be-
comes his agent for that purpose. The relation of principal
and agent is established. It is obvious that for the protec-
tion of the agent it is often desirable that he should be the
exclusive agent and should be protected against the chance
of other agents reaping the benefit of his labor in securing
purchasers—hence arise contracts for exclusive agencies.
The idea, however, that the owner shall be excluded from
the right to sell his own property goes deeper and is so in-
consistent with the notion of ownership and the *jus dis-
ponendi* thereto appertaining that clear and unequivocal lan-
guage must be employed to negative such right. In the
present contract, as is usual in such contracts, the broker
does not bind himself to do anything. He may remain idle
for the whole duration of the contract and the owner can-
not, pursuant to any terms thereof, even censure him for
his inactivity. He has incurred no obligation to act.
Whether he does or not is a matter of choice with him.
Under such a situation the owner's right to sell should not
be construed away upon ambiguous language. The words
"exclusive sale" may well mean exclusive agency to sell—
the idea being that the owner shall employ no other agent
and that the broker shall have the only grant of power to
sell that the owner will execute—hence he shall have the
exclusive sale. It is not unusual to hear real-estate brokers
say, "I have the exclusive sale of that property," when all
they mean is that they have the exclusive agency for its sale.
If spoken words may have that meaning so may also writ-
ten, for ordinarily language acquires no new or different

meaning by being reduced to writing. Hence the words "exclusive sale" may be construed to be an inhibition upon the owner to grant to any one else the power to sell, rather than an inhibition upon his own right to sell. We so construe them, for in order to negative the latter's right, as before stated, clear and unequivocal language to that effect must be employed.

It is said in some of the cases that there is a difference between an exclusive agency and an exclusive sale, but in all the cases called to our attention such statement is made *arguendo*, in construing contracts of agency or of exclusive agency. Such are the following: *Armstrong v. Wann*, 29 Minn. 126, 12 N. W. 345; *Putnam v. How*, 39 Minn. 363, 40 N. W. 258; *Dole v. Sherwood*, 41 Minn. 535, 43 N. W. 569, 5 L. R. A. 720; *Golden Gate P. Co. v. Farmers' Union*, 55 Cal. 606; *Ingold v. Symonds*, 125 Iowa, 82, 99 N. W. 713. In the latter case a contract giving a broker "exclusive *authority* to procure a purchaser" within a definite time was construed not to prevent the owner from selling. The court said: "The right of an owner to sell his own property is an implied condition of every contract of agency, and unless expressly negatived will prevail." We have been unable to find a case where the precise question here presented has been decided. The nearest one is that of *Fairchild v. Rogers*, 32 Minn. 269, 20 N. W. 191, where a broker paid the owner $250 cash for the exclusive right to sell a certain piece of real estate for sixty days upon agreed terms. The court held that the owner could not sell within that time. The contract was oral, is not set out in the report of the case, and the question of its breach is not specifically treated. In view of the consideration paid by the broker for the contract it was no doubt correctly construed. But where, as here, no consideration is paid for the contract and no obligation incurred by the broker to do anything, we deem the construction reached by us to be the more equitable and reasonable.

It should be added that we reach our conclusion from the

terms of the contract itself, irrespective of the fact that defendant testified without contradiction that plaintiff told him that if defendant made a sale plaintiff would get no commission.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint upon the merits.

KERWIN, J. *(dissenting)*. The contract between the parties in this case is as follows:

"It is herein agreed by and between *Frank Roberts,* of Dodgeville, Wisconsin, party of the first part, and *C. Harrington,* of Madison, Wisconsin, party of the second part:

"Party of the second part gives to party of the first part the exclusive sale of his land in the town of Arena, county of Iowa, state of Wisconsin, for a period of four months from the date of this contract; number of acres of land, 185; price per acre, $120. Party of the second part agrees to pay party of the first part a commission of two per cent. All in excess of the contract price shall belong to the party of the first part.

"Party of the second part agrees to accept $5,000 or $6,000 down, balance to be left on the land at a rate of five per cent. interest, purchaser having the right to pay one hundred dollars or any multiple of one hundred at interest-paying day. Total amount must be paid in ten years.

"Party of the second part agrees to furnish an abstract and convey the land by a warranty deed. This contract does not expire if the land is sold to any prospect furnished by party of the first part.

"Dated at Madison, county of Dane, state of Wisconsin, this 13th day of December, 1916.

"C. HARRINGTON.  (Seal.)"

This contract was accepted, acted upon by respondent, and became a binding contract between the parties.

The cases relied upon by the appellant here are where an exclusive *agency* was given, not an exclusive *sale*. While there is conflict in the authorities as to whether or not an exclusive agency precludes the owner from selling without

becoming liable for commission, it is settled in this court that an exclusive agency does not preclude the owner. This is upon the ground that an exclusive agency means that no other agent shall be employed. An exclusive sale is quite a different thing; and where an exclusive sale is given by the owner for a definite period of time the owner is precluded from selling during that period. The question has not been directly passed upon by this court, but in *Greene v. American M. Co.* 153 Wis. 216 (140 N. W. 1130), at p. 222 it is said:

> "A distinction is made in some cases between exclusive power to sell and exclusive agency to procure a sale or find a purchaser; in others between an exclusive agency and an agency for a particular time, where, within it, the agent, proceeding in good faith, finds a purchaser; between a sale, as in this case, without any interference on the part of the agent, and a sale to a person to whose attention the property is brought by the agent. Here there was the ordinary exclusive agency to find a purchaser, and, after long delay, the owner made a sale without the agent being connected with it in any way. In such circumstances the agent is not entitled to commission."

In the instant case the respondent accepted the contract, did considerable work and incurred expense in endeavoring to make the sale. He negotiated with the person to whom the appellant made the sale, had from ten to fifteen interviews with him, urging him to make the purchase and representing that the property was the cheapest in the county. Even if the sale had been made under an exclusive agency the appellant was not entitled to make the sale at a reduced price to a purchaser with whom the respondent had been negotiating and escape the payment of commission. *Oliver v. Katz,* 131 Wis. 409, 111 N. W. 509; *Stewart v. Mather,* 32 Wis. 344.

In the instant case the contract is plain and unambiguous. It gave to the respondent for a period of four months the exclusive sale. This can mean but one thing, viz. that dur-

ing the time given the owner was precluded from making a sale without rendering himself liable for the commission. *Fairchild v. Rogers*, 32 Minn. 269, 20 N. W. 191; *Lapham v. Flint*, 86 Minn. 376, 90 N. W. 780; *Blumenthal v. Bridges*, 91 Ark. 212, 120 S. W. 974; *Schultz v. Griffin*, 5 Misc. 499, 26 N. Y. Supp. 713; *Alexander v. Breeden*, 14 B. Mon. (Ky.) 154; *Stringfellow v. Powers*, 4 Tex. Civ. App. 199, 23 S. W. 313; *Goldsmith v. Coxe*, 80 S. C. 341, 61 S. E. 555.

A claim for reformation, by changing the words of the contract from "exclusive sale" to "exclusive agency," was made in the answer. There was no evidence to support this claim and it was abandoned and not urged in the brief or upon oral argument. It was admitted upon oral argument that the claim for reformation was not urged.

Nor is there any room for the contention that the appellant did not understand the contract. The evidence on the part of the appellant upon this point is negative and evasive, while on the part of the respondent the evidence is clear and positive to the effect that the appellant understood the contract.

It is said in the majority opinion that independent of the contract the evidence that respondent was not to have exclusive sale is undisputed. Obviously the court overlooked the following evidence:

"*Q*. What conversation had you with him with regard to having an exclusive right of sale for four months? (Objected to; objection overruled.) *A*. Well, when I talked with him before, I told him that I wouldn't take the farm without I had the exclusive sale of it, to advertise it and such things.

"*Q*. What did he say to that? *A*. He said he was willing."

*Ingold v. Symonds*, 125 Iowa, 82, 99 N. W. 713, is relied upon by the court, but it will be seen that in that case an exclusive sale was not given. The court said:

"It will be observed that plaintiff was not given the ex-

clusive sale of the property. . . . The only effect of such a contract as the one now before us is to forbid the owner from placing the property in the hands of any other agent."

Reference is also made to *Fairchild v. Rogers,* 32 Minn. 269, 20 N. W. 191, as being distinguishable because a consideration of $250 was paid for the exclusive right of sale. There was a valid consideration for the contract in the case at bar by the acceptance of the contract, performance of services, and expenditure of money in the execution of it, as effectual and binding as if money were paid. This is well settled. *Superior C. L. Co. v. Bickford,* 93 Wis. 220, 67 N. W. 45; *Hooker v. Hyde,* 61 Wis. 204, 21 N. W. 52; *Goward v. Waters,* 98 Mass. 596.

It is true that an owner has the right to sell his own property. The *jus disponendi* is in him. But it is equally clear that he may for a limited period of time divest himself of that right and vest it in another. The giving of an exclusive sale of property for a limited period of time accomplishes that purpose. I have found no case to the contrary. It is true there is a dearth of authority on the particular point in the case at bar. There are many cases involving exclusive agency in this and other courts, and the reasoning in these cases tends strongly to show that, while an exclusive agency does not divest the owner of the right to sell his own property, the contract of exclusive sale does. There is reason and equity in the rule. A broker does not wish to spend time and money in endeavoring to make a sale if the owner at any time can make a sale and leave the broker without commission or compensation for his services. In the instant case the respondent had a contract giving him the exclusive sale for four months. He spent much time and money in endeavoring to sell the property. The appellant stepped in and sold to the person with whom respondent had been negotiating before the time limited in the contract had expired. It cannot be said that respondent would not have sold during

the life of the contract. I am satisfied that the judgment
below is right and should be affirmed.

Mr. Justice ESCHWEILER concurs in the foregoing dissent.