Dougherty and wife, Plaintiffs, vs. W. H. Shenners Company, Defendant.

*March 7—June 18, 1928.*

For the plaintiffs there was a brief by *Brennan, Lucas &
McDonough* of Milwaukee, and oral argument by *Martin J.
Brennan* and *Gerald L. McDonough*.

*Edgar L. Wood* of Milwaukee, for the defendant.

The following opinion was filed April 3, 1928:

ROSENBERRY, J. Upon the plaintiffs' appeal there are nine assignments of error which we shall not set out in detail. Nor do we think it necessary to indulge in an extended discussion of any of the assigned errors except as hereinafter indicated. A careful examination of the record and arguments of counsel convince us that the trial court correctly disposed of the issues presented by the pleadings in all respects except as hereinafter indicated. Upon plaintiffs' appeal it is urged that the court erroneously denied the plaintiffs a jury trial. This is based principally upon the fact that by the nine separate causes of action set out in the amended complaint jury questions were presented. There can be no doubt that the action as begun was an equitable action for an accounting, nor is there any doubt that the issues presented in the amended complaint in the nine causes of action present in substance the issues involved in the original complaint. By splitting up the issues involved in the controversy the plaintiffs did not change the essential nature of the controversy. The exhibits offered and received in evidence clearly indicate that the action was a proper one for a reference and properly triable by the court and the trial court committed no error in that regard.

The principal question raised upon both appeals relates to the nature of the contract entered into between the plaintiffs and the defendant company. The plaintiffs were the owners of a tract of land described as follows: "The north 65.91 acres of the west half of the northwest quarter of section 15, town 7 north, range 21 east." The plaintiffs were farmers residing upon their lands, which lay adjacent to the boundaries of the city of Milwaukee and the city of Wauwatosa. It had become valuable and they were desirous of disposing of the same as residence property, and to that end entered into a contract with the defendant company, which was a

well-established reputable real-estate dealer familiar with the carrying out of projects of the character proposed by the plaintiffs. On May 4, 1921, they entered into a contract by which

"The said parties of the first part hereby constitute and appoint said party of the second part their exclusive special agents, for a period of three years from date, to sell the following described real estate: [Description.]

"The party of the second part agrees, in consideration of a commission hereinafter agreed upon, that it will proceed with the sale of such lots at its own expense, thoroughly advertising the same for sale to the public, and will use its best endeavors to effect the sale of said lots at prices for each lot to be made and agreed upon between the parties hereto, which prices are stated in Schedule A."

Then follows a statement of the terms upon which the lots were to be sold. The parties of the first part agreed to pay the taxes. The contract continues:

"It is agreed that W. H. Shenners Co. shall receive all moneys on account of sale of said lots and credit the same on the pass books of the respective purchasers. It shall send to the parties of the first part a statement on the first of each month of all receipts of the preceding month, and shall remit on the first secular day of each calendar month the amount of said statement, less three per cent. for collection and less the commission due second party. The three per cent. collection fee shall be computed only on the moneys belonging to the parties of the first part.

"The moneys so received from each lot shall be paid to the parties hereto in the following ratio: To the parties of the first part fifty per cent. and the party of the second part fifty per cent. until such times as the party of the second part has received its commission as agent from each lot, after which time it is understood that all proceeds, less said three per cent. for collection, shall be paid to the parties of the first part.

"It is agreed that the amount of commission which the party of the second part is to receive on each lot in the manner aforesaid, shall be $2 per front foot of the width of each lot sold, which shall be full compensation to the party of the

second part for all services rendered and expenses incurred by it in connection with the sale of said property."

Then follows a provision for a resale of lots where the purchasers have defaulted and an agreement as to commission on resales. The contract continues:

"In the event that the party of the second part fails to push the sale of lots energetically before July 1, 1921, or if it does not have one quarter of said lots under *bona fide* contracts of sale within one year from date, the parties of the first part may, by a five-day notice in writing to the party of the second part, declare this agreement terminated, and all rights of the party of the second part thereunder, except to the commission which may accrue from lots already sold, shall thereupon terminate. It is especially understood and agreed that the party of the second part shall look to its commission for its entire remuneration for its services, and the parties of the first part assume no liability otherwise for its compensation, and are in no case to be liable for any expenses that may be incurred, except the cost of platting the land."

A clause is then inserted providing for discounts to purchasers on cash payments. The contract also contains a clause by which the defendant agrees to indemnify the plaintiffs for any damage or loss on account of misrepresentations made in the sale of lots. The north forty acres were platted into 233 lots, of which twenty were reserved by plaintiffs. On May 1, 1925, when the contract was terminated by the plaintiffs, all but fifty-nine of the remaining lots had been sold. Of the fifty-nine, twenty-five had once been sold but the purchasers had defaulted; thirty-four had not been sold at all.

The contract was to run from May 4, 1921, to May 4, 1924. On July 21, 1924, by mutual agreement the contract was continued for three additional years, so that it would not have expired by its terms until May 4, 1927. The plaintiffs claimed that the contract was not validly extended. The trial court found to the contrary and its finding is supported

by abundant evidence. The court awarded the defendant damages on account of the termination of the contract as to the lots remaining unsold in the platted portion, but denied the defendant any damages with reference to the south 25.91 acres. The court apparently did this in reliance upon the authority of *Roberts v. Harrington,* 168 Wis. 217, 169 N. W. 603; *Greene v. American M. Co.* 153 Wis. 216, 140 N. W. 1130.

We are not advised upon what theory the court separated the contract into two parts, as to one of which the plaintiffs had the right of revocation and as to the other the revocation was wrongful. We infer that the court was of the opinion that as to one part there was part performance and as to the other there was not. Both tracts were equally under the contract, being described as one tract in the contract, and we can discover no basis upon which a rule which applies to one does not apply to the other. The trial court said: ·

"The contract in question, in my opinion, is a contract of exclusive agency which does not preclude the owner from selling the property within the term of the contract. (Quoting from *Roberts v. Harrington, supra.*) 'The idea, however, that the owner shall be excluded from the right to sell his own property goes deeper, and is so inconsistent with the notion of ownership and the *jus disponendi* thereto appertaining, that clear and unequivocal language must be employed to negative such right,' "—

and concluded that no such clear and unequivocal language was contained in the contract.

If the contract in question is no more than a mere exclusive agency contract the trial court was undoubtedly right in its conclusion. Following the quotation by the trial court in *Roberts v. Harrington* appears:

"In the present contract, as is usual in such contracts, the broker does not bind himself to do anything. He may remain idle for the whole duration of the contract and the owner cannot, pursuant to any terms thereof, even censure him for his inactivity. He has incurred no obligation to act.

Whether he does or not is a matter of choice with him. Under such a situation the owner's right to sell should not be construed away upon ambiguous language. . . .

"We have been unable to find a case where the precise question here presented has been decided. The nearest one is that of *Fairchild v. Rogers*, 32 Minn. 269, 20 N. W. 191, where a broker paid the owner $250 cash for the exclusive right to sell a certain piece of real estate for sixty days upon agreed terms. The court held that the owner could not sell within that time. The contract was oral, is not set out in the report of the case, and the question of its breach is not specifically treated. In view of the consideration paid by the broker for the contract it was no doubt correctly construed. But where, as here, no consideration is paid for the contract and no obligation incurred by the broker to do anything, we deem the construction reached by us to be the more equitable and reasonable."

That the contract under consideration is more than a mere exclusive agency or broker's contract seems apparent upon a mere inspection of it. By its terms the defendant agreed, first, to proceed with the sale of lots at its own expense, thoroughly advertising the same for sale to the public; second, to collect and receive all moneys paid on account of the sale of the lots; third, to have one quarter of all lots under *bona fide* contracts of sale by July 21, 1925; fourth, agreed to pay all expenses connected with the project except platting the land; fifth, to assist the plaintiffs in fixing prices on lots; sixth, to indemnify the first parties on account of loss or damage due to misrepresentations made in course of sale. The contract does not fall within the same classification as the contract in *Roberts v. Harrington, supra.* The very distinctions pointed out in the *Roberts Case* exist in this case. The defendant could not remain idle,—if one quarter of the lots were not sold within the time specified the contract might be terminated. He was required to make considerable expenditures. While the defendant was undoubtedly plaintiffs' agent, its duties approximated those of a manager of an enterprise. Defendant was to use its skill as a real-estate broker in dis-

posing of plaintiffs' lands for plaintiffs' benefit. The de- fendant had a voice in fixing the price at which the lots were to be sold, the method of putting the property upon the market was left wholly to the discretion of the defendant; and while the plaintiffs reserved certain rights, it is quite apparent from the contract that the defendant was the dominant figure in the transaction.

The contract was one of employment for a definite time and upon a valuable consideration rather than a mere listing contract. It is considered that this case comes clearly within the rule recognized in *Babe v. Lappin,* 188 Wis. 351, 206 N. W. 64, quoting from Mechem on Agency (2d ed.), § 2451:

"It is entirely competent for the parties to make a contract that the broker shall have a definite time; and, while the principal might, nevertheless, in such a case, revoke any authority he had given to the broker (not being coupled with an interest, etc.), he would be liable to the broker for the breach of the contract if he should terminate it before the expiration of the time fixed."

In *Sixta v. Ontonagon Valley L. Co.* 148 Wis. 186, 134 N. W. 341, a right of revocation was denied on the ground that the contract was a mutual one upon consideration where the contract for the sale of lands upon commission embodied other features, including the right of the vendor to sell upon his own account. *Graham v. Lamp,* 174 Wis. 373, 183 N. W. 150; *Schoenmann v. Whitt,* 136 Wis. 332, 117 N. W. 851; *John E. DeWolf Co. v. Harvey,* 161 Wis. 535, 154 N. W. 988; Mechem, Agency (2d ed.), § 1553, p. 1156; *Cloe v. Rogers,* 31 Okla. 255, 121 Pac. 201, 38 L. R. A. N. S. 366 and note; Walker, American Law of Real Estate Agency (2d ed.), p. 20; *Glover v. Henderson,* 120 Mo. 367, 25 S. W. 175. See generally, 24 A. L. R. note p. 1560; L. R. A. 1917 E, note p. 1040.

The contract being mutual and upon consideration, we discover no sound reason for holding that the mere fact the

contract relates to the sale of land rather than to some other transactions justifies us in saying that it may be revoked by the owner without liability. This holding in no way limits or modifies prior decisions of this court holding that a mere exclusive agency contract, such as is described in *Roberts v. Harrington, supra,* may be revoked to the extent that the vendor may sell the property during the period without liability to the agent, where he deals with a purchaser not procured by the agent and the revocation is made in good faith.

When the plaintiff on May 1, 1925, two years before the contract expired by its terms, without adequate cause, terminated the contract, the defendant was entitled to treat it as a breach and plaintiffs became liable to the defendant for damages on account of the breach. Mechem, Agency (2d ed.), p. 1156, § 1553.

The contract being entire, the trial court should have considered the defendant's damages with reference to the south 25.91 acres and not confined its determination in that respect to the north forty acres which had been platted. Such part performance as there was related to the contract as an entirety and not to the separate tracts. The issues between the parties having been fully litigated as to everything except defendant's damage by reason of the plaintiffs' revocation of the contract having deprived it of the right to sell the south 25.91 acres, the judgment will be reversed on defendant's appeal and cause remanded with directions to the trial court to add to the amount found due from the plaintiffs to defendant such additional damage as the court shall find the defendant sustained by reason of being deprived of the right to sell the south 25.91 acres. Upon the plaintiffs' appeal the judgment is affirmed.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied, with $25 costs, on June 18, 1928.