EMILE W. DUPUIS *vs.* ELZEAR L. DUPUIS.

Worcester.    April 2, 1929. — May 28, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Broker,* Commission.

At the trial of an action against an owner of land for a commission which the defendant agreed to pay to the plaintiff if he procured a purchaser of the land at $18,800 or at whatever price the defendant should sell it, there was evidence that, during the next month, the defendant had conversations with a customer introduced to him by the plaintiff; that the customer declined to pay the defendant's "final price" and gave up all thought of acquiring the property at that price; that, a few days after the last interview between the parties, the plaintiff had a conversation with the defendant in which, at the request of the defendant, he gave him the address of the customer, and said that the customer would have to "buy through me," and the defendant said, "Well, we'll call all negotiations off. I will pay you no . . . commission and give my property away. I can give it away myself without paying a commission"; that, about a week later, the customer saw an advertisement of another broker with whom the defendant had listed the property and, as a result of negotiations thereupon had through the second broker, purchased the property for $17,500. *Held,* that it was error to refuse to rule, as requested by the defendant, that "Upon all the evidence there is no evidence . . . of bad faith or fraud upon the part of the defendant in making the sale as it was made to the . . . [customer] through the efforts of . . . [the second broker]."

CONTRACT by a broker for a commission. Writ in the Central District Court of Worcester dated December 1, 1926.

Upon removal to the Superior Court the action was tried

before *P. J. O'Connell,* J.  Material evidence and rulings requested by the defendant and refused by the judge are stated in the opinion.  At the close of the evidence, the judge denied a motion by the defendant that a verdict be ordered in his favor.  The jury found for the plaintiff in the sum of $600, and the defendant alleged exceptions.

The case was submitted on briefs.

*M. M. Taylor,* for the defendant.

*O. L. Roy & C. W. Proctor,* for the plaintiff.

PIERCE, J.  This is an action of contract with a declaration in two counts.  Count 1 is to recover the reasonable value of time and effort expended in successfully procuring at the request of the defendant a customer for certain real estate owned by the defendant at No. 4-A Holland Road, Worcester, Massachusetts.  Count 2 is to recover an alleged agreed commission for procuring at the request of the defendant a customer of the land described in Count 1.  The answer is a general denial and payment.  The case went to trial upon the pleadings; neither count was waived. All the material testimony and the charge of the judge are contained in the bill of exceptions.

At the close of the testimony for the plaintiff, and again at the close of all the testimony and before the arguments, the defendant in writing moved the court to direct a verdict for the defendant.  This motion was denied and the defendant excepted thereto.  The defendant then requested the following rulings: (1) "Upon all the evidence the plaintiff cannot recover"; (2) "Upon all the evidence there is no evidence to be submitted to the jury upon the issue of bad faith or fraud upon the part of the defendant in making the sale as it was made to the Cummingses through the efforts of Messrs. Brophy and O'Day"; and (3) "Upon all the evidence, there is no evidence that the sale of the property in question subsequently made was carried through in any bad faith or fraud upon the plaintiff."  These requests were denied and the defendant excepted.  The jury found for the plaintiff. The case comes before us on the defendant's exceptions to the refusal of the judge to grant the motions and to give the requested rulings.

The evidence material to the issues raised would warrant the finding of the following facts: About the first part of October, 1926, the defendant "listed" for sale with the plaintiff the real estate described in the plaintiff's declaration, and agreed that the plaintiff should receive a commission of three per cent if he should procure a customer ready, willing and able to buy the property at $18,800 or at whatever price the defendant should sell it. Thereafter the plaintiff advertised the property and "found a family by the name of Cummings," who had answered one of his advertisements. He made an appointment with Mrs. Cummings and her daughter, and they met and went to the three-family house in question at No. 4-A Holland Road, where the plaintiff introduced them to the defendant. The defendant showed them through the house and told them that he wanted $18,800 for it; and Mrs. Cummings "said the house was very nice property but more than they wanted to pay and [that] she thought they would be more interested in a property at $17,500." The plaintiff then showed them a property across the way which was selling for that price. They then came back to the defendant's and had a talk about another house belonging to him. At that time Mrs. Cummings stated, in substance, that "she was not interested in it at $18,800." There was evidence that Mrs. Cummings said she would give $18,000 and that the defendant said in substance that he could not consider as his "final figure" "less than $18,500." The evidence as to the times of the interviews between the Cummingses and the defendant is somewhat confused, but warranted a finding that the first interview was on October 10, 1926, and the second during the week of October 31, 1926; at the last interview Mrs. Cummings offered to buy, and the defendant refused to sell, at $18,000. On November 7, 1926, the plaintiff by appointment met the defendant at the house and there introduced Mr. Cummings to him, and the defendant showed him the house and gave his final price as $18,500.

There was further evidence that the plaintiff, over the telephone, had a conversation on November 9, 1926, with the defendant and gave him at the defendant's request, the

address of the Cummings family, and said: "If Mr. and Mrs. Cummings decide to buy they will have to buy through me, because I was the first broker to have shown them your house and they would have to buy through me," and that the defendant answered, "You know those brokers get whatever they can." It does not appear to be disputed that at this interview, in consequence of the language of the plaintiff, the defendant said: "I don't want to listen to that kind of stuff over the telephone . . . . Well, we'll call all negotiations off. I will pay you no three per cent commission and give my property away. I can give it away myself without paying a commission." The undisputed evidence is that at this time the Cummingses had given up all thought of acquiring the property at the defendant's "final price" of $18,500. After the telephone conversation with the defendant the plaintiff did nothing further to bring about the sale which was in fact made to Mr. and Mrs. Cummings on November 17, 1926, for $17,500.

At the trial it was the contention of the plaintiff that his employment had not been terminated when the property was sold to the Cummingses, for the reason that the defendant had withdrawn his offer to the plaintiff in bad faith and with a purpose to appropriate the services of the plaintiff without paying the agreed commission.

The facts leading up to the sale to the Cummingses on November 17, 1926, which were warranted by the evidence, are as follows: After the Cummingses and the defendant failed to come to terms, the Cummingses saw an advertisement in a newspaper by one Frank Brophy, a real estate broker. Miss Cummings answered it, and Mrs. Cummings and her daughter met Brophy at his office. Brophy showed them what real estate he had and then asked Charles G. O'Day, a real estate broker, "if he had anything in that section of the city." Brophy learned through O'Day that he had the defendant's Holland Road property listed, and that fact was brought to the attention of the Cummingses.

O'Day testified, in substance, that he saw the defendant and asked to be given a chance to sell the property; that the defendant gave a price of $18,800; that he brought a customer

down there three or four days afterwards, a Mr. Keaney; that he "went after the defendant and got him, he came over so we three were together and there was a talk. I don't recall when I next saw the defendant about selling his real estate, but I went down there one day and I said, 'I think the other deal is off, but I got another customer, if you want to go through with the deal now, you can go through with it'; I told him the last price; $17,500.; he said, 'Let us get together'; the customer that I then had in mind was Mrs. Cummings; down to that time I had never told the defendant who my customer was"; that the same night the Cummingses, Mr. Brophy and the defendant met in Mr. Hartwell's office, and O'Day and Brophy offered to reduce their commissions without agreeing upon any specified deduction. The defendant testified that it was an entire surprise to him that the Cummingses should want to buy his property; and O'Day testified that up to the time the parties met in Hartwell's office he had not told the defendant that the customers were the Cummingses.

Upon the above facts the jury warrantably could have found (1) that the plaintiff, in reliance on the offer of the defendant, produced customers who became the purchasers of the listed property upon the defendant's terms, or (2) that the offer was withdrawn before the customer was produced and the defendant had agreed upon the terms of the sale. If it is assumed that the jury found that the offer was withdrawn, it is plain the facts in evidence would not warrant the inferential finding that the withdrawal of the offer was in bad faith. *Leonard* v. *Eldridge,* 184 Mass. 594. *Cadigan* v. *Crabtree,* 186 Mass. 7. *Semonian* v. *Bloomberg,* 253 Mass. 32. It follows that the request of the defendant numbered "2" should have been given.

*Exceptions sustained.*