WILLIAM H. PALMER & others *vs.* WILLIAM W. CHERNEY & another, trustees.

Norfolk. January 6, 1930. — March 6, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Broker*, Commission.

At the trial of an action by a broker for a commission, there was evidence that the defendant, a landowner, listed the land with the plaintiff for sale; that the plaintiff introduced the defendant to a customer at a conference at which the customer offered to buy the land for a certain price, to be paid partly in cash, partly by the assumption by the customer of mortgages and partly by a transfer by him to the defendant of other property; that the defendant later stated that he was not interested, after which the plaintiff made no further attempt to sell the property; that it was sold two months later to the same customer through another broker with whom it had been listed by the defendant before the listing with the plaintiff; that the total sale price and the method of payment were the same as those previously offered by the customer, excepting that the amount of cash paid and a part of the property transferred to the defendant were different; and that, after the action was commenced, the defendant said to the plaintiff that he would have taken care of the plaintiff "on the commission end of it" if the plaintiff had treated him properly. The trial judge denied a motion by the defendant that a verdict be ordered in his favor. The jury found for the plaintiff. *Held*, that

(1) Nothing appeared to show that the defendant acted in bad faith to deprive the plaintiff of a commission;

(2) A finding was not warranted that the defendant and the plaintiff agreed to definite terms of sale or that the defendant accepted any offer submitted through the plaintiff: the plaintiff never produced a customer ready, able and willing to purchase on the defendant's terms;

(3) The plaintiff not having an exclusive agency, he could recover only if his efforts were the efficient cause of the sale finally made;

(4) A finding was not warranted that the plaintiff's efforts were the efficient cause of that sale;

(5) The statement by the defendant to the plaintiff after the commencement of the action did not render the defendant liable in the circumstances;

(6) The trial judge should have allowed the defendant's motion.

(7) Judgment was ordered for the defendant.

CONTRACT.   Writ dated March 30, 1925.

Material evidence at the trial in the Superior Court before *Callahan*, J., is stated in the opinion.   The judge denied a motion by the defendants that a verdict be ordered in their favor.   The jury found for the plaintiff in the sum of $3,985.69.   The defendants alleged exceptions which, after the death of *Callahan*, J., were allowed by *Keating*, J.

· *M. McConnell*, (*J. E. McConnell* with him,) for the defendants.

*P. E. Troy*, for the plaintiffs.

CROSBY, J.   This is an action to recover a real estate broker's commission.   The declaration is in three counts. The jury returned a general verdict for the plaintiffs.   The case is before this court on exceptions to the denial of the defendants' motion for a directed verdict, to the admission of evidence, and to the refusal to give certain rulings.

The defendants were trustees of the Kilsyth Realty Trust.   It was agreed that they had power under the terms of the trust to mortgage or sell the trust property, or to deal with it in any way.   Joseph E. Palmer, one of the plaintiffs, testified that in December, 1924, he saw the defendants and asked them if they wanted to sell an apartment house which they afterwards sold to one Berman; that they said they did; that this plaintiff asked them if he could sell it for them and they consented; that the plaintiffs listed it in their office and endeavored to sell it; that the offer they gave him for a sale was $115,000 and $120,000 for a trade.   This witness further testified that he went to see the defendants without any invitation from them, and had not done business with them before that time; that there was no talk about a commission; and that he told them he was a broker.

Mary T. Palmer, a sister of the plaintiffs, testified that in December, 1924, there were present in the plaintiffs'

office the defendant Cherney, Berman, one Herberts, one of the plaintiffs, and herself; that she introduced Cherney to Berman; that there was a conversation at that time respecting the apartment house; that Berman said he was interested in the property and Cherney asked him "what he had to offer"; that Berman spoke of a garage and Cherney said he was not interested in it; that Berman then said he had some Wales Street stores, a second mortgage for $6,000 on some property in Chelsea, and some cash. There was evidence that a statement respecting the Wales Street stores including the income, mortgage and assessed valuation, was typewritten and mailed by the plaintiffs to Cherney on the same date. This witness further testified that about two days later she telephoned Cherney and asked him if he had looked over the statement and he replied that he had but was not interested; that no further attempt was made to sell the defendants' property; that about two months later she learned that it had been sold by the defendants to Berman, and that then the present action was brought; that thereafter the defendants came to the plaintiffs' office and in the presence of two of the plaintiffs one of the defendants said, "Why didn't you fellows treat us like gentlemen, and we would have taken care of you on the commission end of it"; that Cherney said, "We didn't consider the Wales Street property at all"; that he denied having received a statement respecting this property.

Berman was called as a witness by the plaintiffs and testified as to the conversation which he had with Cherney in the plaintiffs' office in December, 1924, above referred to. He testified that Cherney wanted $125,000 for the property; that he (Berman) asked him if he "would take some trade" and Cherney replied "What have you got"; that the witness replied that he had a garage on Dorchester Avenue and some other pieces of property, and that Cherney replied "No, I will not consider any trade, but I want some cash"; that the witness offered the garage but that Cherney did not want it; that he then offered the Wales Street property; that Cherney said he would not consider

any trade, that he wanted cash; that "he wanted all cash but the mortgages; that there was a first mortgage of $62,000 and a second mortgage of about $20,000 on the property; that Cherney was disposed to take a larger second mortgage, but the most part of it he wanted in cash; that Cherney didn't tell him how much the second mortgage was, said there was a first mortgage of $62,000 and there was some talk about raising the second mortgage to $38,000; that witness spoke about the second mortgage of $6,000 in Chelsea as part of the consideration and Cherney replied that he didn't want any second mortgage, that he wanted cash; that witness didn't give him any details at all as to the Wales Street property; that some time later he bought the . . . property and paid $125,000 for the same, made up as follows: $62,000 first mortgage; $38,000 second mortgage; $14,500 in an assignment of a second mortgage of property on Glenville Avenue, Brighton, the equity in the Wales Street stores for $6,000 $4,500 in cash, $1,500 in notes, and the balance in adjustments of taxes and interest; that the price was $125,000, and the adjustment about $1,500, making a total of $126,500."

In reply to questions by the trial judge, Berman testified in substance as follows: "that there was a $62,000 first mortgage on the defendant's property and a second mortgage of $20,000 and that Cherney said to him: 'and if you will do the trading, I will take the mortgage. I will pay off the $20,000 mortgage and put on a mortgage of $38,000.;' that they started with $100,000 in mortgages, and that witness offered Cherney up to $125,000 in some equities he had in second mortgages; that he first offered him the equity in the Dorchester Avenue garage of $20,000, which Cherney said he wasn't interested in; that that passed out of the offer; that then witness offered the equity in the Wales Street property at $6,000; and a $6,000 second mortgage in Chelsea; that Cherney said he would see about the Chelsea mortgage; and that witness offered the balance of $13,000 in cash; that the offer, including the Wales Street property, was entirely separate from the offer of the garage;

that Cherney said he would see about the Wales Street property; that the second mortgage in Chelsea of $6,000 and the balance of $13,000 cash went with the offer of the Wales Street property."

After the negotiations between the defendants and Berman had come to an end, the property was sold by the defendants to Berman through the office of one McCoy where it had been listed for sale for about a year before the sale to Berman. It thus appears that the plaintiffs did not have the exclusive sale of the property. In these circumstances it is plain that they were not entitled to a commission merely by bringing the property to the attention of Berman who finally bought it; they must show that their services were the efficient or effective means of bringing about the actual sale. *Crowninshield* v. *Foster*, 169 Mass. 237, 238. To entitle a broker to a commission it must also be shown that a purchaser is procured who is willing to buy on the terms upon which the owners authorized the sale. The offer which the plaintiffs secured from Berman was that the latter would buy the defendants' property and pay therefor in trade $125,000, to be paid as follows: The property was subject to a first mortgage of $62,000 and a second mortgage of $20,000; the defendants were to pay the second mortgage and take a new second mortgage for $38,000. The balance to be paid by Berman amounting to $25,000 was by transfer to the defendants of the equity in the Wales Street property at $6,000, a second mortgage on real estate in Chelsea amounting to $6,000 and the balance of $13,000 to be paid in cash. The defendants refused to sell their property on these terms.

The sale by the defendants as finally made to Berman through the office of McCoy was made up of the first mortgage of $62,000 on the property, a second mortgage of $38,000, the Wales Street property at $6,000, an assignment of a second mortgage for $14,500 on property on Glenville Avenue, in Brighton, and the balance of $4,500 was to be paid in cash and notes. No mention was made of the second mortgage on the Glenville Avenue property in the negotiations between the plaintiffs and Berman. The substi-

tution of this mortgage for $14,500 for the mortgage of $6,000 on the property in Chelsea, and the payment of $4,500 in cash and notes instead of $13,000 in cash, constituted a substantial difference in the terms of sale submitted to the defendants by the plaintiffs, and those for which the property was finally sold.

There was no evidence which would warrant a finding that the defendants sold the property for the purpose of avoiding the payment of a commission to the plaintiffs, or that otherwise they acted in bad faith with intent to defraud the plaintiffs of a commission. *Walsh* v. *Grant,* 256 Mass. 555, 558. *Stuart* v. *Clark,* 259 Mass. 383. *Dupuis* v. *Dupuis,* 267 Mass. 224. The cases of *O'Connell* v. *Casey,* 206 Mass. 520, and *Semonian* v. *Bloomberg,* 253 Mass. 32, cited by the plaintiffs, are not applicable to the facts in the case at bar. Upon the facts most favorable to the plaintiffs it properly could not be found that the defendants ever agreed with the plaintiffs as to the final terms of a sale, or accepted any definite offer submitted to them by the plaintiffs. In these circumstances the plaintiffs never produced a customer who was ready, able and willing to purchase the defendants' property upon terms authorized by them. *Clark* v. *Bonner,* 217 Mass. 201. *Cesana* v. *Johnson,* 232 Mass. 444. *Kelly* v. *Johnson,* 258 Mass. 478. *Goldstein* v. *Ziman,* 259 Mass. 430. The evidence did not warrant a finding that the services of the plaintiffs were the efficient or effective cause of the sale to Berman. *Crownin-shield* v. *Foster, supra. Elliott* v. *Kazajian,* 255 Mass. 459, and cases cited. *Walsh* v. *Grant, supra. Dupuis* v. *Dupuis, supra.* Where several brokers are employed to sell the same property, the principal is liable to pay a commission only to the broker whose services were the efficient cause of bringing about the actual sale. *Kimball* v. *Hayes,* 199 Mass. 516. *Nichols* v. *Atherton,* 250 Mass. 215. The facts in the case at bar are distinguishable from those in *Hall* v. *Grace,* 179 Mass. 400, *French* v. *McKay,* 181 Mass. 485, and *Stuart* v. *Valsom,* 249 Mass. 149.

The testimony that the defendants said in substance that if they had been treated properly by the plaintiffs they

would have been willing to pay the commission would not make them chargeable therefor in the absence of any evidence showing a legal liability. A consideration of the evidence most favorable to the plaintiffs shows that the sale as finally consummated was on terms materially different from those offered by the plaintiffs to the defendants. Accordingly that question could not properly have been submitted to the jury. It also is plain that a finding was not warranted that the plaintiffs were the efficient cause of the sale. It follows that the defendants' motion for a directed verdict should have been allowed. As the action cannot be maintained on any count of the declaration for the reasons stated, it is unnecessary to consider other exceptions saved by the defendants.

*Judgment for the defendants.*