Golos, Respondent, vs. Worzalla and others, Appellants.

*September 14—October 10, 1922.*

*Judges: Affidavit of prejudice: Duty to call in another judge: Change of venue: Waiver of disqualification: Interest: When payable: Vendor and purchaser: Sale of lands to third person: Value: Measure of damages: Evidence: Expense of selling lands as deduction from purchase price: Settlement: Calendar entry by court: Error: Cure.*

1. Under sec. 2625, Stats. 1917, providing that, on application for a change of the place of trial on account of the prejudice of the judge, such judge may, in his discretion, retain the action in the same court and may call in another circuit judge to hold court, if an affidavit of prejudice has been made and the circuit judge called in another judge to hold court in the same county, no duty rested on the first judge to send the case to another county, and the circuit court where the action had begun did not lose jurisdiction.

2. The object and purpose of the statute is to obtain for a party a trial in his home county before an unprejudiced judge, and it is only when another judge cannot be secured that the venue of the action must be changed.

3. The disqualification of a judge may be waived by the parties except where otherwise provided by statute.

4. Where trial was delayed for nearly four years, after which the parties proceeded as if no affidavit of prejudice had been filed, the fact of such filing having been forgotten by all parties and by the court, the disqualification of the judge was impliedly waived by the conduct of the parties.

5. In the absence of a clause making interest payable annually, interest at a given rate per annum is payable at the same time the principal becomes due and not before.

6. In an action for breach of contract by vendors to clear land sold by them, the court, believing that certain evidence was erroneously admitted, refused a new trial if plaintiff would consent to a judgment on a basis of $30 per acre for clearing the land, which was the estimated cost as testified to by one of the defendants. The error was cured as to the defendants when plaintiff consented to entry of judgment in accordance with the suggestion of the court.

7. Where it appeared that the premises had again been sold by the vendors and that another tract of land had been accepted as part of the purchase price, evidence as to the expense of selling the land received in the exchange, to establish a deduction from the agreed purchase price, was properly excluded, no effort having been made to show the market value of the land.

8. Where the defense of settlement was interposed, a calendar entry in the handwriting of a judge who did not have jurisdiction to try the case, that it was settled, was properly excluded, the memorandum being made to indicate, for the purpose of making up the calendar, what disposition had been made of the case.

9. A recovery of the value of land contracted to be sold by defendants to plaintiff as of the date of sale by defendants to a third person, less sums due by plaintiff to defendants, including the remainder of the purchase price, interest, and taxes, was correct.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

On September 16, 1912, the defendants sold to the plaintiff forty acres of land in Marathon county, Wisconsin. The agreed price was $1,100, upon the following terms: $10 down, $490 on or before September 25, 1912, thereafter $10 per month until one half of the purchase price was paid, and the balance on or before ten years from the date of the contract, with interest at the rate of six per cent. per annum, the first year without interest. Shortly after the making of the contract the plaintiff went into possession of the premises and built a log cabin thereon. He never cleared any land ready for the plow, but did some clearing, about two acres in extent. The defendants agreed, as a part consideration of the purchase, to clear five acres of land on the premises on or before April 15, 1913.

This action was begun on the 8th day of October, 1916, to recover damages occasioned by the failure of the defendants to clear five acres of land in accordance with the contract. Issue was joined and an affidavit of prejudice was filed against the presiding judge, A. H. REID, and on December 21, 1916, Judge PARK was called in to try the case. The case was set for trial in the early part of January, 1917, before Judge PARK. It is admitted that there was talk of settlement, and the defendants' claim is that the action was settled or at least a settlement agreed upon. Shortly after the agreement, which apparently was an oral understanding, the plaintiff was arrested on the charge of adultery and sentenced to a term of eighteen months in the state prison. On April 2, 1918, the defendants sold the land to a third party for $1,865, it appearing that they had erected a house upon the land at a cost of $450 and accepted forty acres of land in exchange. No steps were taken in the action from the time of the supposed settlement in January, 1917, until October, 1920, when the plaintiff moved the court for leave to file a supplemental complaint. This motion was heard by Judge REID, and it does not appear that either of the parties called the court's attention to the fact of the filing of the affidavit of prejudice in November, 1916. A supplemental complaint was filed, setting up the sale of the premises to a third party without the knowledge or consent of plaintiff and claiming damages by reason of such sale. The defendants answered by way of confession, avoidance, and denial, and set up a counterclaim asking for a foreclosure of the land contract; that the premises be sold pursuant to law; that the plaintiff be barred from all right, title, and interest in and to the lands, and for judgment against the plaintiff for the sum of $56.55 and interest. There was a reply to the counterclaim, and upon the issues made the case was submitted to the jury upon a special verdict, in response to which the jury found as follows:

"(1) What was the market value on April 2, 1918, of the west half of the west half of the northeast quarter of section 34, township 27 north, range 8 east, in the condition in which it was then? *A.* $1,415.

"(2). How much more would said land have been worth on April 2, 1918, if the defendants had cleared five acres thereof before April 15, 1913? *A.* $300.

"(3) What was the total rental value for the years 1913, 1914, 1915, 1916, and 1917, all included, of five acres of cleared land, if the same had been located upon the description aforesaid? *A.* $60.

"(4) What amount, if any, remains due the defendants from the plaintiff upon account of lumber and other merchandise sold to the plaintiff? *A.* None.

"(5) What amount, if any, remains due the plaintiff for labor performed by him for the defendants in the year 1913? *A.* $17.

"(6) Did the plaintiff and the defendants in the early part of 1917, while this action was pending, agree to settle all their matters in difference by the defendants paying back to the plaintiff all sums that he had paid on the land in question, plus $150, and the plaintiff thereupon releasing his interest in said land? *A.* No."

The case was tried in May, 1921. After verdict the defendants moved for judgment upon the verdict, in the alternative, first, for judgment for the defendants notwithstanding the verdict; second, in case the first motion should be denied, then for foreclosure of the land contract; third, in the event that the first two motions should be denied, that the defendant be granted a new trial for errors upon the trial; fourth, that in the event the first three motions were denied, the plaintiff be allowed judgment for the amounts paid upon the land contract, with interest at the rate of six per cent.; fifth, in the event the first four motions were denied, that the court change the answer to question No. 1 from $1,415 to $1,200 upon the undisputed evidence, that the answer to question No. 2 be changed from $300 to $25, that the answer to question No. 5 be changed from $17 to nothing, and for judgment upon the verdict as amended.

Defendants' motions were denied, and judgment was entered in favor of the plaintiff for $1,072.69 and costs. From the judgment so entered the defendants appeal.

For the appellants the cause was submitted on the brief of *A. L. Smongeski* of Stevens Point.

*Brayton E. Smith* of Wausau, for the respondent.

ROSENBERRY, J. The first question raised by the defendants requires us to determine the effect of the filing of the affidavit of prejudice and the proceedings in the circuit court for Marathon county subsequent thereto. An intelligent consideration of this question requires a brief review of the history of this sec. 2625, Stats. 1917. Prior to 1853 the judge was required, upon the filing of an affidavit of prejudice, to decide upon the fact of his own prejudice. In 1853 the statute was amended so as to make it the imperative 'duty of the judge, when a proper affidavit was filed, to remove the case to another circuit. *Rines v. Boyd,* 7 Wis. 155. Sec. 2625, R. S. 1878, provides:

"The court shall change the place of trial of any action upon the application of any party thereto who shall file his affidavit, that he has good reason to believe, and does believe, that he cannot have a fair trial of such action on account of the prejudice of the judge, naming him."

Under this statute it was held that upon the making of the motion, upon a proper affidavit, the judge lost all right to act further in the case except to make a proper order for the removal thereof, and that having on his demand the right under the law a party did not waive it by going to trial thereafter in the court where the action was pending. *Hewitt v. Follett,* 51 Wis. 264, 8 N. W. 177, and cases cited.

By ch. 435 of the Laws of 1887, sec. 2625, was amended to read as follows:

"Whenever an application shall be made in any civil or criminal action or proceeding in any circuit court for a

change of the place of trial on the ground of the prejudice of the judge of the court in which such action or proceeding is then triable, such judge, in his discretion, may retain such action or proceeding in the same court without entry of an order to change the place of trial, until the last day of the then current term, if the application is made at a term at which the action or proceeding is triable, or the next term if it is made in vacation; and in the meantime shall call upon some other circuit judge or judges to attend and hold court during such current or next term, for the purpose of trying all such actions or proceedings in which applications for change of place of trial have been made on account of the prejudice of the circuit judge."

In *Northwestern Iron Co. v. Crane,* 66 Wis. 567, 29 N. W. 654, the construction of the first clause of the statute adopted in *Hewitt v. Follett, supra,* was adhered to.

The statute further provides:

"But if no such judge can so attend, an order for a change of the place of trial shall be entered in each action and proceeding, wherein proper application has been made, on the last day of such term, and thereupon such change shall be made."

In this case, however, another circuit judge was called and did attend and did hold court within the time prescribed by statute. It is apparent, therefore, that jurisdiction of the action remained in the circuit court for Marathon county.

It was held in *Hewitt v. Follett,* 51 Wis. 264, 8 N. W. 177, that the affidavit, being in law conclusive evidence of the prejudice of the judge, disqualified him, and that he was thereafter in a situation similar to that of a judge who was a party interested in the matter in controversy.

The provision of the statute requiring a change of venue upon the filing of a proper affidavit of the prejudice of a trial judge has not, since the amendment of 1887, imperatively required a change of venue except in those cases where no other judge has been called in to try the case.

*State ex rel. Watson v. Clementson,* 133 Wis. 458, 113 N. W. 667; *Odegard v. North Wis. L. Co.* 130 Wis. 659, 110 N. W. 809.

Under the circumstances in this case there was no duty resting upon the circuit. judge against whom the affidavit was filed to send the case to another county. It may be inferred from the record, and such no doubt is the case, that the fact of the filing of the affidavit of prejudice had wholly passed from the mind of the trial judge and he proceeded in the action of 1920 and 1921 without having the matter; in any way called to his attention. It is clear in this case that the circuit court for Marathon county did not lose jurisdiction, and therefore the question of whether or not jurisdiction of the court can be conferred by act of the parties does not arise as it did in the cases of *Rines v. Boyd,* 7 Wis. 155; *Runals v. Brown,* 11 Wis. 185; and *Hewitt v. Follett,* 51 Wis. 264, 8 N. W. 177.

The question presented here is, Can a party waive the disqualification of the judge, created by the filing of the affidavit, by subsequently appearing and proceeding with the cause as if no affidavit had been filed?

In *Franke v. Neisler,* 97 Wis. 364, 72 N. W. 887, an affidavit of prejudice was presented to the trial judge. He suggested that other parties should join in it, and thereupon the attorney presenting it withdrew it, tore it up, and the trial proceeded. It was held that the application was not refused but was withdrawn and it was competent for the party presenting it to withdraw it.

In *Greene v. American M. Co.* 153 Wis. 216, 140 N. W. 1130, it appears that the case had been partially tried when proceedings were discontinued with the purpose of commencing the trial anew. An affidavit of prejudice having been filed, the case was assigned in the same circuit (Milwaukee county) for trial before another judge. It was claimed that the court had no jurisdiction to proceed. In disposing of this contention the court said:

Golos v. Worzalla, 178 Wis. 414.

"The trial was entered upon and proceeded to judgment without objection. The court, as presided over by the judge in question, had jurisdiction of such subjects. The voluntary submission to the trial gave it jurisdiction of the parties and of the particular controversy. If it did not have the same before, exercise thereof was not such a jurisdictional matter as to be unwaivable."

In *Runals v. Brown*, 11 Wis. 185, the defendant upon filing an affidavit of prejudice left the court room and did not thereafter engage in the trial. In *Rines v. Boyd*, 7 Wis. 155, the defendant filed a petition alleging prejudice of the trial judge and gave notice of a hearing thereon two days later. Plaintiff's counsel objected to the application that eight days' notice had not been given, and the objection was sustained by the court. Thereupon the defendant applied to the court for an order to show cause why the place of trial should not be changed pursuant to the prayer of the petition. This was also refused. Counsel for the defendants then asked the court for the postponement of the trial for eight days. This application was likewise denied. It will be seen from a consideration of the facts in the case at bar that the circumstances upon which the waiver was predicated are very different from the circumstances in *Rines v. Boyd, supra,* and it must be borne in mind that that case was decided under a statute which required a change of venue and under which the filing of the affidavit was held to deprive the court of jurisdiction. We are not disposed to limit or overrule these decisions. On the other hand, we do not think that they should be extended to cover situations not clearly contemplated by the legislature. As is stated in prior decisions, the object and purpose of the statute is to obtain for a party a trial in his home county before an unprejudiced judge, and it is only when another judge cannot be secured that the venue of the action must be changed.

That the disqualification of a judge may be waived by the parties except where it is otherwise provided by statute

seems to be well established. *Utz & Dunn Co. v. Regulator Co.* 213 Fed. 315, 319, and cases cited; *McGovern v. Mitchell,* 78 Conn. 536, 63 Atl. 433, note by judges.

It is expressly provided by sec. 2579, Stats., that the disqualification of a judge by reason of his interest in the action or by the fact that he has formerly acted as attorney or counsel for either of the parties may be waived by consent.

Sec. 2623 provides: "Whenever the judge is a party or interested in the matter in controversy in any action pending before him, or is related to or has been of counsel for either party, the court or the presiding judge thereof shall, upon application of either party, and may without such application, change the place of trial," clearly implying that if the parties do not make such application the judge, unless he act upon his own motion, may continue to exercise jurisdiction in the case.

In this case, as has been pointed out, the judge promptly complied with the statute upon the filing of the affidavit. The case properly remained in the circuit court for Marathon county. There cannot be the slightest doubt that, had the attention of the trial judge been called to the fact that an affidavit of prejudice had been filed, he would have promptly proceeded to call in another judge. The question raised here was never called to his attention, so far as the record discloses, before the trial, at the trial, or after the trial. After nearly four years of delay the parties proceeded as if the case was duly and regularly pending in the circuit court for Marathon county. An application to amend the pleadings was granted. The defendant, who here raises the question, not only failed to call the attention of the court to the fact that the affidavit had been filed, but answered the amended complaint and interposed an equitable counterclaim demanding affirmative relief. The cause was fully tried upon its merits, submitted to a jury, and thereafter motions were filed by the defendants asking for judgment

in their favor both upon the issues presented by the complaint and the answer thereto and by the reply to their counterclaim. Upon denial of the motions judgment was entered, and the question of the power or right of the trial judge to proceed is not raised or suggested until briefs are filed in this court. If in any case a waiver may be implied from the subsequent conduct of the parties, it certainly may be implied in this case. It is not supposed that the conduct of the attorney for the defendants in failing to call the attention of the court to the fact that an affidavit had been filed was intentional. While there is nothing definite in the record in regard to it, we are inclined to the view that the fact of the filing of the affidavit of prejudice had passed from the minds of all parties and that they proceeded and intended to proceed as if no affidavit had been filed. Having sought the determination of the court upon the issues presented by their pleadings, having prosecuted the trial to judgment, we are of the opinion that they are now estopped from asserting that the trial judge was disqualified. In other words, by their conduct in this case the defendants have waived the disqualification of the trial judge which arose upon the filing of the affidavit of prejudice.

This is no doubt an extreme case. It is clear that a waiver of disqualification is not contrary to the policy of our law, as indicated by reference to the statutes and decisions cited. A waiver should not be implied except where the facts are clear and it appears that no right of the party in respect thereto has been consciously denied by the judge. That the judge against whom the affidavit was filed would have authority to proceed if a written waiver were filed in a case like this is clear. We think it is equally clear that it may be inferred from the conduct of the defendants in this case.

By the terms of the contract the plaintiff was to pay down $490 on or before September 25, 1912. In addition to $10 paid at the time of the execution of the contract,

the plaintiff paid $275 on September 24, 1912, and on October 10, 1912, $248, in all the sum of $533. It is the contention of defendants that on February 25, 1913, there was due to the defendants a further payment of $17, and that by reason of the failure of the plaintiff to pay this sum he breached the contract and was not entitled to recover for the reason that he was in default. The trial court found that before there was a substantial breach of the contract by the plaintiff the defendants very substantially breached their contract by failing to clear the land as agreed. We think this finding of the trial court is sustained. It does not appear that the defendants ever took any steps toward clearing the five acres of land, the clearing of which was to be completed before April 15, 1913. We shall not discuss at length, therefore, the second and third assignments of error, which relate to whether or not there was due to plaintiff, by reason of services performed by him for the defendants, the sum of $17, or whether the amount due was actually $14.75. The defendants in any event never treated the failure, if there was one, to pay the remaining $2.25 or any other instalment as a breach of the contract. The defendants were furnishing to the plaintiff certain supplies and the plaintiff was employed by the defendants in and about the work of clearing land. Under the circumstances it is very difficult to determine the exact state of the account on the 1st day of February, 1913. The breach on the part of the plaintiff, if there was one, was technical and not substantial, nor was it in any way relied upon by the defendants. They at all times prior to the sale of the premises dealt with the plaintiff as if the contract were in full force and effect.

The contract contained the following provision: "Then the balance on or before ten years from date, interest six per cent. per annum, first year without interest." The trial court construed this clause to mean that the remainder of the purchase price was to be paid on or before ten years from the date of the contract except there was to be no interest

for the first year, the whole amount of interest to be payable with the principal at the end of the term. In the absence of a clause making interest payable annually, interest at a given rate per annum is payable at the same time the principal becomes due and not before. 22 Cyc. 1482, par. 4, and cases cited; 15 Ruling Case Law, p. 12, § 9, and cases cited. The trial court therefore correctly construed the contract in this respect.

The trial court sustained an objection to evidence offered to explain the meaning of the word "clear" as used in the contract. Upon motions after verdict the trial court was of the opinion that refusal to receive this evidence constituted error, but refused to grant a new trial if the plaintiff should consent to judgment on the basis of allowing $30 per acre for clearing land under the contract. One of the defendants testified upon the trial that it would cost $30 per acre to clear the land as that term was understood and used in the contract. The plaintiff consented to entry of judgment in accordance with the suggestion of the court. As to the defendants the error was fully cured.

In the course of the trial it appeared that the premises in question had been sold by the defendants for the sum of $1,865 after improvements costing $450 had been placed thereon. It also appeared that the defendants had accepted in payment of the purchase price forty acres of land from the purchaser, Waszut. The defendants offered to show the expense of selling land of the same character as they received in exchange, to wit, the forty acres in question. The defendants offered this testimony apparently for the purpose of arguing that the cost of selling should be deducted from the agreed purchase price. This testimony was excluded by the trial court and we think correctly. If the land received in exchange was not worth the stated price, the defendants no doubt had a right to show the value of the property received by them, but no effort to show its value was made. If the land received by them in exchange

was fairly worth the amount allowed for it in the trade, it was immaterial that at some future time the defendants might be to some expense in making a sale. The jury found in answer to question No. 3 that the rental value of five acres of cleared land was $60, or $12 per year. This would be at the rate of $2.40 per acre. It is argued that this finding is not supported by the evidence. The testimony of one of the defendants was that they were renting from five to six acres of tillable land for $12 a year. There was other testimony to the effect that the rental value was higher. In any event there is sufficient evidence to sustain the verdict in this respect.

It is also argued that there is no evidence to sustain the finding of the jury to the effect that the land at the time of the sale was worth $1,415 exclusive of the improvements placed thereon by the defendants. We shall not attempt to recite the testimony upon this point. It appears that that was the amount received for the land by the defendants in exchange. Taking into consideration the selling price in 1912, the improvements placed upon the premises in question by the plaintiff, the increase in value which would have attached had the defendants cleared five acres of land in accordance with their contract, and other testimony in relation to the value of the premises, together with the fact that the agreed sale price was $1,415, and the further fact that farm lands generally appreciated in value between the date of the contract and the date of sale, we are of the opinion that there is ample evidence to sustain the finding.

The defendants set up in their answer a claim that the cause of action sued upon had been settled. This refers to a settlement alleged to have been made before Judge PARK in January, 1917. It is claimed by the defendants that they were to repay to the plaintiff the amount paid by him, and in addition thereto $150 for improvements placed upon the land by the plaintiff, in full settlement.

It appears that, if a settlement was reached, it was made

by one of the defendants and the former attorney of the plaintiff. It nowhere appears that the plaintiff authorized the making of such a settlement or ratified it after it was made. Upon the court calendar there was noted opposite the title of the case, "Case settled." This notation was in the handwriting of Judge REID. He does not remember upon what information the notation was made, but presumably upon a statement by the clerk of the court to that effect. In order to establish the claimed settlement the defendants offered this entry upon the calendar in evidence. It was objected to and the objection sustained, and we think correctly so. That there was a talk of settlement and some understanding was arrived at between the defendants and the plaintiff's former attorney seems to be undisputed. It must be remembered that the notation was made upon the court calendar by Judge REID, who did not have jurisdiction of the case, Judge PARK being present and presiding at the time of the making of the alleged settlement. It was a memorandum made by the judge to indicate, for the purpose of making up the calendar, what disposition had been made of the case. It was not evidence of any settlement made and entered into by the plaintiff.

The court gave the plaintiff judgment for the value of the land as of the date of sale less such sums as were due and owing by the plaintiff to the defendants, including the remainder of the purchase price, interest, and taxes. We think the basis upon which the judgment was awarded is correct.

Other errors assigned need not be discussed in the view which we take of the case.

*By the Court.*—Judgment affirmed.