PURE MILK PRODUCTS COOPERATIVE, and another, Respondents, v. NATIONAL FARMERS ORGANIZATION, and others, Appellants.

*No. 461. Argued May 6, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 564.)

242

For the appellants there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland, S. C.,* of Milwaukee, attorneys; *Boardman, Suhr, Curry & Field* of Madison, and *Rowley & Scott* of Washington, D. C., of counsel; and oral argument by *Victor M. Harding* and *James A. Feddersen,* both of Milwaukee.

For the respondents there was a brief by *George M. St. Peter* and *St. Peter & Hauer,* all of Fond du Lac, and *Sidney Harris, Pamela M. Noland, Michael M. Eaton,* and *Arent, Fox, Kintner, Plotkin & Kahn,* all of Washington, D. C., and oral argument by *George M. St. Peter* and *Sidney Harris.*

WILKIE, J. We first consider the request for the substitution of judge. The issue is whether that request was timely under sec. 261.08, Stats. It was not.

Sec. 261.08 (1), Stats., provides:

"Any party to a civil action or proceeding may file a written request with the clerk of courts for a substitution of a new judge for the judge assigned to the trial of the case. The written request shall be filed on or before the first day of the term of court at which the case is triable or within 10 days after the case is noticed for trial. Upon filing the written request, the filing party shall forthwith mail a copy thereof to all parties to the action and to the named judge."

The defendants contend that their request for substitution of judge was timely because the statute allows the request to be filed up to and within ten days after the case is noticed for trial. They point out that this case has never been noticed for trial under sec. 270.115, Stats.

Thus, the narrow question here is whether the fact that the case had not been noticed for trial made the request timely where there had already been preliminary proceedings on the preliminary injunction request.

In the 1863 case of *Swineford v. Pomeroy* [1] this court construed the then applicable substitution statute to preclude such request after the trial of the action had commenced. The applicable statute at that time read: [2]

"Whenever any party, in any civil action, pending in any court of record, shall apply for a change of the place of trial of such action, on account of the prejudice of the judge of such court, and shall verify such application by his oath or affidavit, the court shall change the place of trial of such action."

This court, despite the general language of the statute, felt it had to be given a rational construction. The court stated:

[1] (1863), 16 Wis. 575 (*553).
[2] Sec. 8, ch. 123, Stats. 1858.

". . . It is not to be supposed that it was intended to grant a party the right to change the place of trial after a jury is empaneled and testimony has been given in the cause. Such an idea is not to be entertained, except upon the clearest evidence that this is the express meaning and intention of the statute. Otherwise a person whose moral sensibilities were not very acute and nice, might, after entering upon the trial of the cause, because the judge ruled contrary to his expectations or unfavorably to him, apply for a change of the place of trial, and obtain it. This practice, of course, would frequently be attended with the greatest inconvenience and injustice. But we are decidedly of the opinion that the statute was never intended to apply to such a case, or grant any such right, at that stage of the cause. . . ." [3]

This limitation has been applied in several cases since that time. [4]

Plaintiffs contend that the instant case comes within this rule, asserting that the trial was commenced at the hearing on the temporary injunction because evidence was adduced which could be used in the final determination on the merits. We think not.

In *People v. Rice Associates* [5] a New York court held that "trial" in its commonly accepted meaning is that part of a civil or criminal proceeding beginning with the opening of the case to the jury and ending with the verdict. And in *Molen v. Denning & Clark Livestock Co.* [6] the Idaho court quoted with approval the definition of "trial" as set forth in Corpus Juris. " 'A trial may be said to have commenced when all of the preliminary

[3] *Swineford v. Pomeroy, supra,* footnote 1, at page 577 (*555).

[4] *Allis v. Meadow Spring Distilling Co.* (1886), 67 Wis. 16, 29 N. W. 543, 30 N. W. 300; *State ex rel. Winchell v. Circuit Court* (1903), 116 Wis. 253, 93 N. W. 16; *Greene v. American Malting Co.* (1913), 153 Wis. 216, 140 N. W. 1130; *Will of Kuttig* (1952), 260 Wis. 415, 50 N. W. 2d 669; *Luedtke v. Luedtke* (1966), 29 Wis. 2d 567, 139 N. W. 2d 553.

[5] (1945), 185 Misc. 473, 56 N. Y. Supp. 2d 833.

[6] (1935), 56 Idaho 57, 60, 50 Pac. 2d 9.

questions have been determined and the jury, or the court in the absence of a jury, enters on the examination of the facts for the purpose of determining the controversy.' " And in *Superior Oil Co. v. Superior Court* [7] it was contended that a trial had been commenced with the hearing of a motion for a preliminary injunction. The court was concerned with a statute which required that a case be dismissed if not brought to trial within five years. The court held that under the practice in California it is assumed that a trial on the merits follows the hearing and issuance of a preliminary injunction. Thus, we conclude that the "trial" was not actually commenced at the time of the hearing on the preliminary injunction within the meaning of that line of Wisconsin cases holding that a request for substitution comes too late if made after the commencement of the trial of the action.

But is the request too late if made, as here, following the hearing on the temporary injunction motion?

Many other jurisdictions have held that an affidavit of prejudice does come too late if filed after the hearing of contested preliminary matters.

In *McClenny v. Superior Court of Los Angeles County,* [8] the court described the interpretations placed on the California substitution statute which provided that the motion could not be made " 'after swearing in the first witness or the giving of any evidence or after trial of the cause has otherwise commenced.' " The court cited several cases which had held that an affidavit of prejudice was filed too late when filed after the judge has decided preliminary contested matters. In *Honolulu Roofing Co. v. Felix* [9] the Supreme Court of Hawaii construed a substitution statute requiring filing of the motion

---

[7] (1936), 6 Cal. 2d 113, 56 Pac. 2d 950.

[8] (1964), 36 Cal. Rptr. 459, 461, 388 Pac. 2d 691.

[9] (1967), 49 Hawaii 578, 616, 426 Pac. 2d 298.

" 'before the trial or hearing of the action or proceeding' " to require that filing precede the hearing of preliminary contested motions. In *People v. Savaiano* [10] the Illinois statute requiring that the motion be made "[w]ithin 10 days after a cause . . . has been placed on the trial call of a judge" was construed. It was said to be well settled that a substitution petition must be filed at the earliest practical moment and that petitions delayed until after the trial judge has by his rulings passed upon substantive issues and indicated his views on the merits of the cause came too late.

In *State v. Armijo* [11] the New Mexico Supreme Court construed a statute requiring that when a case is at issue and is to be tried at a term of court the affidavit must be filed not less than ten days before the beginning of the term to require filing before any contested preliminary proceedings are had. The court held that an affidavit of prejudice is timely if filed before the court has made any ruling on any litigated or contested matter whatsoever in the case.

". . . We cannot permit a litigant to test the mind of the trial judge like a boy testing the temperature of the water in the pool with his toe, and if found to his liking, decides to take a plunge."

In *Swineford* [12] our court decided that the legislature could not have intended by the wording of the then-controlling statute to allow a change of judge after the commencement of the trial. We conclude that the legislature could not have intended by the wording of sec. 261.08, Stats., to allow a change after the hearing of a contested motion which implicates the merits of the action.

[10] (1973), 10 Ill. App. 3d 666, 294 N. E. 2d 740.
[11] (1935), 39 N. M. 502, 506, 50 Pac. 2d 852.
[12] *Supra,* footnote 1.

The right to a substitution of a judge can also be waived by participating in the trial of the action after a petition has been filed.[13] That right can also be waived by participation in preliminary motions in which the judge is allowed to receive evidence which of necessity is used and weighed in deciding ultimate issues as determined by the Arizona court in *Marsin v. Udall*.[14]

In *Marsin v. Udall* the court qualified the holding in an earlier Arizona case which stated that where a party permitted the judge to rule in any contested matter whatsoever he waived his right to disqualify the judge. The prior Arizona case had involved an application for a temporary injunction in which voluminous evidence was taken including the testimony of witnesses. The court in *Marsin* stated:

". . . We think under these circumstances the result reached that the affidavit in that case was untimely filed was correct for the reason that the parties had permitted the judge to accept evidence which of necessity would have a bearing on final determination of the matter on the merits. . . . The effect of all this was that Judge BARRY had partially tried the issue to be ultimately decided. This does not mean that all evidence submitted on a preliminary motion would operate to shut off a subsequent affidavit of bias and prejudice. Evidence of collateral matters not bearing on the final decision cannot constitute a waiver of the right to challenge the fairness of a judge, but this court is committed to the rule that if a judge is allowed to receive evidence which of necessity is to be used and weighed in deciding the ultimate issues, it is too late to disqualify him on the ground of bias and prejudice." [15]

The sole issue on the merits on this appeal is whether the trial court abused its discretion in granting the temporary injunction.

---

[13] *Golos v. Worzalla* (1922), 178 Wis. 414, 190 N. W. 114.

[14] (1955), 78 Ariz. 309, 279 Pac. 2d 721.

[15] *Id.* at pages 314, 315.

Sec. 268.02, Stats., provides that a temporary injunction may be granted when it appears from his pleading that a party is entitled to judgment and any part thereof consists of restraining some act the commission of which during the litigation would injure him. The granting of a temporary injunction is a matter within the discretion of the trial court and the sole issue on appeal is whether the trial court abused its discretion.[16] However, injunctions are not to be issued lightly,[17] but only where necessary to preserve the status quo of the parties and where there is irreparable injury.[18]

In *Mogen David Wine Corp. v. Borenstein* [19] this court quoted with approval from an Iowa case which stated:

" 'The writ [temporary injunction] is to a great extent a preventive remedy; and where the parties are in dispute concerning their legal rights, it will not ordinarily be granted until the right is established, especially if the legal or equitable claims asserted raise questions of a doubtful or unsettled character.' "

Although there is clearly a dispute as to what conduct of the defendants can be lawfully enjoined under the common law and Wisconsin statutes, sec. 185.43, the trial court chose to hear several days of testimony and receive numerous exhibits and render a decision granting a temporary injunction which restrained the defendants-appellants from:

(1) Interfering with the Membership and Marketing Agreements between the plaintiffs and their producer-members and inducing or attempting to induce them to

[16] *American Mut. Liability Ins. Co. v. Fisher* (1973), 58 Wis. 2d 299, 206 N. W. 2d 152; *Shearer v. Congdon* (1964), 25 Wis. 2d 663, 131 N. W. 2d 377.

[17] *Bartell Broadcasters v. Milwaukee Broadcasting Co.* (1961), 13 Wis. 2d 165, 108 N. W. 2d 129.

[18] *Fromm & Sichel, Inc. v. Ray's Brookfield, Inc.* (1966), 33 Wis. 2d 98, 146 N. W. 2d 447.

[19] (1954), 267 Wis. 503, 509, 66 N. W. 2d 157.

breach, repudiate or terminate their agreements with the plaintiffs.

(2) Aiding, in any manner, in the breach, repudiation or termination of such Membership and Marketing Agreements.

(3) Persuading or attempting to persuade producer-members of plaintiffs to breach, repudiate, or terminate their membership agreements with the plaintiffs.

(4) Persuading or attempting to persuade said producer-members of plaintiffs to sell or ship their milk to plants other than at the direction of the plaintiffs.

The order specified, however, that the defendants-appellants were free to deal with and market the milk of producers who had signed National Farmers Organization milk sales agreements which preceded in time the producers' membership and marketing agreement with the plaintiffs. It was further provided that the milk sales agreement referred to did not include the National Farmers Organization membership agreement or milk processing and sales agreement.

The defendants-appellants urge that this injunction is excessively broad and restrictive of fair competition and that the NFO should be allowed to deal with any milk producer as long as the milk producer is not induced to breach any existing commitment he has with another marketing agency. The plaintiffs contend that all activities restrained by the order can be restrained by virtue of the provisions of sec. 185.43, Stats., and the principles of the common-law tort of contract interference.

The original statute giving protection to the contracts of agricultural associations was created by the Laws of 1925, ch. 181. The original statute was numbered 185.08, and sub. (6) read as follows:

"Where any contract exists between an association and a member, any person who, with knowledge or notice of the existence of the contract, induces or attempts to

induce or aids in the breach thereof by any means, shall be liable to the aggrieved party for damages on account of such interference with said contract and shall also be subject to an injunction to prevent the interference or further interference therewith."

The wording of this section was unchanged until 1955 when ch. 185 of the statutes relating to co-operative associations was extensively revised. By sec. (6) of ch. 368 of the Laws of 1955, sec. 185.43 of the statutes was created to read:

"185.43 **Relief against breach or threatened breach.** (1) . . .

"(2) Any person, with actual or constructive notice that a contract exists, who induces or attempts to induce any member to breach or repudiate his contract with the association, or who in any manner aids a breach of such contract, is liable to the aggrieved party for damages caused by such interference. The association is also entitled to an injunction to prevent any interference or further interference with the contract."

The wording of the two sections is almost identical, except that the original section used only the word "breach." In the new section the word "repudiate" is used once. The title of the statute remained the same describing the statute as referring to relief from breach or threatened breach. Although the title is not part of the statute it may be persuasive of the interpretation to be given the statute. A revision committee note accompanied the 1955 repeal and re-creation of this statute which stated that: "No substantial change is intended from provisions in 185.08 (1953)." By sec. 990.001 (7) of the statutes the legislature has provided that notes in a revision bill saying that the meaning of the statute is not changed by the revision, are indicative of the legislative intent. The present note is ambiguous. It does not provide that no change was intended, but rather that no "substantial change" was intended. This is sufficient to

indicate that what is still protected by this statute is "breach" of contracts and not inducement of termination of such contracts according to their own terms.

The plaintiffs-respondents contend that by using the word "repudiate" the legislature must have meant "terminate." They assert that the term "breach" includes both the concept of present breach and anticipatory breach and that therefore "repudiate" would be superfluous and must refer to something more than future breach of contract. However, the plaintiffs are mistaken in their assertions concerning the definition of breach contained in the Restatement of the Law of Contracts. Section 312 defines a breach of contract as: "non-performance of any contractual duty of *immediate* performance." [20] Thus this section does not embrace, as the plaintiffs contend, the anticipatory breach of a contract. Section 318 describes what constitutes anticipatory repudiation of a contract. If a party before he has committed a breach under sec. 312 states to the promisee that he will not or cannot perform his contractual duties or does any voluntary act which renders performance of his contractual duties impossible constitutes an anticipatory repudiation of his contract and is considered a total breach. Thus the Restatement of Contracts does not support the plaintiffs' contention that "repudiate" would be redundant or superfluous if it is interpreted to refer to anticipatory breach of contract. The Restatement definitions do not compel the conclusion that by the use of the word "repudiate" the legislature meant to go beyond the concept of "breach" and to refer to lawful termination of a contract according to its terms.

There have been no decisions of this court made after the revision of the statute and thus there are no opinions construing the meaning of "breach or repudiate" to include termination. The cases decided under the old sec.

---

[20] Restatement, 1 *Contracts*, p. 462, ch. 11, sec. 312 (emphasis added).

185.08, Stats., do not factually support the contention of the plaintiffs dealing as they do with situations of breach only. Although the cases decided under this statute state that co-operative associations are favored by our laws and that it is the manifest intent of the legislature to promote the organization and success of co-operative marketing associations,[21] it cannot be inferred, as the plaintiffs would have this court do, that the legislature intended to limit legitimate competition among co-operatives by preventing anyone from encouraging or persuading a producer to terminate his association with one marketing group and to join another. In *Akron Milk Producers v. Lawson Milk Co.*[22] the Ohio court held that although co-operative marketing groups may be favored by the federal and state governments this does not give any association greater privileges than would be enjoyed by individuals. The court went on to hold that therefore a milk company could not be enjoined from arguing its advantages and persuading the producers of milk to enter into contracts with the company and to legitimately terminate their contracts with the plaintiff association or any other group. The court was quick to make clear that the defendant could not induce breaches of existing contracts. The plaintiffs contend that this case can be discounted because the court stated at one point in its opinion that co-operatives in Ohio are not given as much protection as is given in some other states. However, this statement was made in reference to another claim of the plaintiffs unconnected with the issue of competition. Also this statement does not in any way aid in the interpretation of any particular statute in Wisconsin nor imply that

[21] *Northern Wisconsin Co-operative Tobacco Pool v. Bekkedal* (1924), 182 Wis. 571, 197 N. W. 936; *Watertown Milk Producers Co-Operative Asso. v. Van Camp Packing Co.* (1929), 199 Wis. 379, 225 N. W. 209, 226 N. W. 378; *In re Wisconsin Co-Operative Milk Pool* (D. C. Wis. 1940), 35 Fed. Supp. 787.

[22] (1958), 77 Ohio Abs. 275, 147 N. E. 2d 512.

the Ohio court agrees with the plaintiffs' contention that sec. 185.43 (2), Stats., protects them from having any other marketing groups attempt to persuade its members to terminate their memberships in the plaintiffs' association and join another.

However, sec. 185.43 (2), Stats., does offer broad protection to Wisconsin co-operatives. Under this statute it is not necessary to demonstrate intent; injury is presumed from violation of the statute; it creates an offense of attempted inducement; and it provides for constructive notice of the existence of the contract. Under sec. 185.42 the filing of a uniform contract and a list of farmers signatory thereto "constitutes notice to all persons of the association's rights under the contract." In *Watertown Milk Producers Co-Operative Asso. v. Van Camp Packing Co.*[23] this court stated that the "sum and substance of sec. 185.08 is to prevent any one from buying the products of a member of such an association during the time when he is under contractual obligation to deliver his product to the association." In *Neillsville Shipping Asso. v. Lastofka*[24] a dealer was informed by a producer that he was no longer a member of the plaintiff association and the dealer bought cattle from him. This court determined that the plaintiff association was entitled to a permanent injunction against the dealer although there was obviously no malicious intent or actual knowledge of the contract then in effect. The court felt that the dealer had enough facts to put him on inquiry to ascertain if the contract was indeed ended.

Thus, we conclude that under the provisions of sec. 185.43, Stats., the plaintiffs are entitled to at least a temporary injunction against the defendants for inducing or attempting to induce the breach of the plaintiffs' contracts with producers regardless of whether the de-

[23] *Supra,* footnote 21, at page 388.
[24] (1937), 225 Wis. 350, 274 N. W. 280.

fendants felt they had prior contracts which took precedence over the plaintiffs' contracts. Under *Neillsville* they would also be entitled to at least a temporary injunction to prevent the defendants from marketing the milk of producers under contract to the plaintiffs. Even agency contracts are within the protection of the cooperative marketing act.[25]

The plaintiffs also maintain that the defendants may be enjoined from inducing the termination of producers' membership and marketing agreements with the plaintiffs under the common law. The plaintiffs-respondents state the rule of the common law too broadly. Sec. 766 of the Restatement of the Law of Torts provides as follows:

"Sec. 766 GENERAL PRINCIPLE.

"Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

"(a) perform a contract with another, or

"(b) enter into or continue a business relation with another is liable to the other for the harm caused thereby."[26]

And in sec. 768, the Restatement of the Law of Torts describes one very broad privilege.

"Sec. 768 PRIVILEGE OF COMPETITOR.

"(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if

"(a) the relation concerns a matter involved in the competition between the actor and the competitor, and

"(b) the actor does not employ improper means, and

"(c) the actor does not intend thereby to create or continue an illegal restraint of competition, and

"(d) the actor's purpose is at least in part to advance his interest in his competition with the other.

---

[25] *Spencer Co-Operative Live Stock Shipping Asso. v. Schultz* (1932), 209 Wis. 344, 245 N. W. 99.

[26] Restatement, 4 *Torts*, p. 49, ch. 37, sec. 766.

"(2) The fact that one is a competitor of another for the business of a third person does not create a privilege to cause the third person to commit a breach of contract with the other even under the conditions stated in Subsection (1)." [27]

The comments on clause (b) indicate that the predatory means discussed in sec. 767 of the Restatement—physical violence, fraud, civil suits and criminal prosecutions—are all improper means of inducement. Sec. 767 of the Restatement of Torts describes factors to be used in determining the existence of a privilege. Fraudulent misrepresentations are stated to be ordinarily improper means of inducement and defeat the existence of a privilege. The Restatement describes a representation as fraudulent when "to the knowledge or belief of its utterer, it is false in the sense in which it is intended to be understood by its recipient." [28]

This formulation of the common law of interference with contracts has been recognized in Wisconsin. In *Mendelson v. Blatz Brewing Co.*[29] this court stated that it aligned itself with the majority of jurisdictions in holding that a cause of action is maintainable for unlawful interference with an employment contract terminable at will. The court quoted from sec. 766 of the Restatement of Torts that " 'one who, without a privilege to do so,' " induces or otherwise purposely causes a third party not to perform a contract is liable for harm caused. Therefore, the focus of the case was on whether the defendants had a privilege to cause the termination of the plaintiff's employment which was assumed to be terminable at will. The court found that the alleged motives of the defendants to force the plaintiff to sell his stock and to

[27] *Id.* at page 71, sec. 768.

[28] *Id.* at pages 65, 66, sec. 767, Comment on Clause (a).

[29] (1960), 9 Wis. 2d 487, 101 N. W. 2d 805. *See also* discussion of Wisconsin cases in *National Oil Co. v. Phillips Petroleum Co.* (D. C. Wis. 1966), 265 Fed. Supp. 320.

replace him in his corporate position with the son of one of the defendants did not come within the privilege of the defendants as majority stockholders to take whatever action they felt was advisable to further the interests of the corporation.

The plaintiffs-respondents cite a New York case as supporting their assertion that inducing termination of a contract is actionable. In *Silva v. Bonafide Mills*,[30] the plaintiff alleged that he had entered an agreement with a mill whereby the company agreed to sell all its sawdust to the plaintiff at a fixed price. The mill had the right to cancel the contract upon forty-five days' notice. The plaintiff alleged that the defendant, with full knowledge of the contract, wrongfully, knowingly, intentionally and maliciously persuaded the mill to cancel the contract and that the defendant thereby obtained the sawdust for himself. The New York court, relying on the case of *General Out Door Advertising Co. v. Hamilton*[31] held a cause of action was stated. However, in *Hamilton*, the court held that a party to a contract can recover damages from a third person for inducing the other contracting party to exercise his privilege of cancellation if the third person induced cancellation by false statements and unfair means, constituting fraud, and cancellation would not have otherwise resulted. Thus the court in *Silva* may be missing the actual holding in *Hamilton*, or it may simply be giving a liberal construction to the allegations as setting forth a cause of action of use of improper means to induce cancellation. We think it clear that New York does not reject the principles of the Restatement of Torts. In *Cohen v. Brunswick Record*[32] an action was brought to recover damages from the defendant for inducing a minor to disaffirm on

[30] (1948), 82 N. Y. Supp. 2d 155.
[31] (1935), 154 Misc. 871, 278 N. Y. Supp. 226.
[32] (1961), 31 Misc. 2d 525, 527, 221 N. Y. Supp. 2d 893.

grounds of infancy his agreements with the plaintiff for the manufacture and distribution of records made of the minor by the plaintiff and providing for exclusive rendition of services as a singer. The court held the contract unenforceable and the defendant not liable for inducing the minor to terminate the agreement. The New York court said:

"The result would be different were the gravamen of the complaint the fraud or misrepresentation of the third party in inducing such disaffirmance, as was held in *Rice v. Manley* (66 N. Y. 82). There the third party fraudulently misrepresented certain facts in inducing one of the contracting parties to walk away from his contractual obligations. The actionable wrong was the fraud and misrepresentation and not the act of inducement. This is not the situation herein, since nowhere in plaintiff's complaint is there an allegation of fraud or misrepresentation."

Therefore, if the defendants come within the provisions of sec. 768 of the Restatement of Torts, they are liable to the plaintiffs only if they used improper means of inducement to terminate contracts with the plaintiffs. Such improper means within the principles of the Restatement are coercion by physical force or fraudulent misrepresentation. Sec. 768 gives a privilege to competitors. We believe that the plaintiffs and the defendants are competitors within the scope of this section even though they are nonprofit organizations. The two groups are competing for sources of milk from farmer-producers by seeking their membership and marketing contracts.

The issue then resolves itself to whether the trial court abused its discretion in granting the injunction given the applicable legal principles and the evidence presented by the plaintiffs. The record supports the court's conclusion that the plaintiffs will probably succeed on the merits in proving their allegations of inducement and attempted inducement of breach of contract and aiding breach of

contract under the provisions of sec. 185.43, Stats. It is clear from the testimony adduced by the plaintiffs at the hearing on the temporary injunction that the National Farmers Organization was attempting to acquire the right to market the milk of all producer-members of NFO whose membership in the NFO preceded any other affiliation or contracts with other agricultural marketing organizations, such as the plaintiffs'. It is clear that the defendants feel that the membership agreement with them authorizes such action. The trial court in its order granting the temporary injunction found that neither the National Farmers Organization membership agreement nor the milk processing and sales agreement granted the NFO the exclusive right to market the signing producers' milk or obligated the producer to market milk through or at the direction of the NFO. It cannot be said that this was not a reasonable conclusion.

However, the order also restrains the defendants from inducing, aiding or persuading producer-members of the plaintiffs to terminate their membership and marketing agreements with the plaintiffs. As discussed above this action would not render the actor liable unless improper means were used for such inducement. The plaintiffs in their complaint allege no improper means of inducement and both the plaintiffs and the trial court may have been operating under the erroneous conclusion that sec. 185.43, Stats., also made inducement of termination of contracts, according to their terms, actionable. The only evidence of any "misrepresentations" by the defendants is contained in Exhibits 14, 15, and 18. None of these exhibits was referred to in the oral testimony at the hearing and no oral testimony was adduced on this subject. On this state of the record we do not think that a trial court could reasonably conclude that the plaintiffs succeeded in establishing that the defendants were inducing termination of membership agreements by false representations.

We conclude that the order of the trial court should be modified to lift the restraint on inducing, aiding or persuading producer-members of the plaintiffs to terminate their membership and marketing agreements with the plaintiffs according to the terms of those agreements.

The defendants-appellants also make two other objections to the order of the trial court. The first objection is that the trial court failed to make adequate findings of fact as required by sec. 270.33, Stats.[33] The findings could have been more detailed, but there is nothing lacking in the meeting of the requirement that would create reversible error. The supreme court can either affirm or reverse depending on whether the decision is supported by the evidence or remand for further findings and conclusions. A recital in an order is equivalent to a finding.[34] The trial court found (1) that the plaintiffs would probably succeed on the merits in that they had adduced evidence tending to establish the allegations of the complaint which, if unrebutted, would result in a verdict in their favor; (2) that the plaintiffs would be irreparably injured [35] if the alleged conduct of defendants continued during the course of the litigation; and (3) that it was appropriate that a temporary injunction issue in order to preserve the status quo between the parties and prevent the final judgment from being rendered ineffectual. In its order the trial court found that the membership agreement and the milk processing and sales agreement of the defendants did not give the defendants

[33] "270.33 Trial by court; findings, judgment. Except in actions and proceedings under ch. 299, upon a trial of an issue of fact by the court, its decision shall be given in writing and filed with the clerk within 60 days after submission of the cause, and shall state separately the facts found and the conclusions of law thereon; and judgment shall be entered accordingly."

[34] *Brown v. Sucher* (1950), 258 Wis. 123, 45 N. W. 2d 73.

[35] *See American Mut. Liability Ins. Co. v. Fisher, supra,* footnote 16.

the exclusive right to market the signing producers' milk. Furthermore, a remand for more detailed findings in this case would only serve to further delay the final determination on the merits.

The defendants also assert that the order of the trial court is overbroad and grants all the relief which could be granted on a final resolution of the controversy. The order does no more than preserve the status quo. Not all the relief prayed for by the plaintiffs in their complaint is granted by the order. As modified, it does not hinder any legitimate activities of the defendants. The order quite clearly refers only to the marketing of milk and does not prevent the defendants from discussing other commodities with their members. The order also can fairly be read not to prevent the defendants from contacting new producers. Any further clarification of the order should await actual concrete factual situations and not be based on hypothetical problems.

We do not reach the defendants' constitutional issue with respect to the trial court order because of our disposition of their appeal. The only conduct which is enjoined is conduct forbidden by statute or the common law. Certainly one is not privileged by the first amendment to engage in unlawful activities.[36]

*By the Court.*—Order reversed and cause remanded for the entry of an order consistent with this opinion. Relief denied on requested writ of mandamus. Costs on appeal to appellants; costs on mandamus proceeding to respondents.

---

[36] See *John F. Jelke Co. v. Beck* (1932), 208 Wis. 650, 242 N. W. 576; *Holiday Magic, Inc. v. Warren* (D. C. Wis. 1973), 357 Fed. Supp. 20.