Robert R. LIEBE, Plaintiff-Appellant,

v.

CITY FINANCE COMPANY and Better Business Bureau
of Greater Milwaukee, Defendants-Respondents.†

Court of Appeals

*No. 79–1436. Submitted on briefs May 6, 1980.—
Decided June 9, 1980.*
(Also reported in 295 N.W.2d 16.)

† Petition for review denied.

For the appellant the cause was submitted on the brief of *Robert E. Sutton* of Milwaukee.

For the defendant-respondent City Finance Company the cause was submitted on the brief of *Pegeen Brosnan* of *Phillip & Sletteland* and *Ernest J. Phillip,* of counsel, of Milwaukee.

For defendant-respondent Better Business Bureau of Greater Milwaukee the cause was submitted on the brief of *James P. Brennan* of *Brennan & Collins* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J. Robert Liebe appeals from a judgment which dismissed Liebe's action for tortious interference with contract on the merits as to all defendants, including City Finance Company and the Better Business Bureau of Greater Milwaukee. Liebe contends that the trial court erred in instructing the jury on the 1977 version of secs. 766, 767, and 772 of the Restatement (Second) of Torts;[1] in setting aside the jury verdict returned in favor of Liebe; and in granting the defendants' motion for a directed verdict which had been taken under advisement until after the jury returned a verdict. We disagree with the contentions and affirm.

In 1976, Liebe mailed approximately 1,000 flyers advertising a book he had written entitled "I'm Fed Up With The Cost of Finance Company Loans." The flyer

[1] The Restatement of Torts was adopted by the American Law Institute in 1939. A tentative draft of the chapter concerning tortious interference with contract was completed in 1969. The Restatement (Second) of Torts, ch. 37, Interference With Contract or Prospective Contractual Relation was adopted in 1977 and published in 1979 as volume four of the Restatement (Second) of Torts.

offered information on how to save substantially on loans if the recipient mailed $10 to R & K Publishing, P.O. Box 282, Plover, Wisconsin, 54467.

The Memphis office of City Finance received one of the flyers. It passed from Mr. Smith, the president of City Finance, to Paul Slicer, an attorney for City Finance, to James Werson, the executive director of the National Consumer Finance Association, to William Devine, the president of the Midwest Finance Association, to Werner Wilking, the executive vice-president of the Wisconsin Consumer Finance Association. Mr. Wilking sought the identity of the owners of R & K through Robert Hampton, president of the Better Business Bureau of Greater Milwaukee, who obtained Liebe's name as owner of the post office box from the postal inspector of the Milwaukee office of the postal service.

Mr. Hampton mailed Liebe a standard Business Bureau information form. Liebe filled it out and returned it. On the form and in an attached letter, Liebe requested that his employment with the Thorp Finance Corporation in Stevens Point, Wisconsin, be kept confidential.

Hampton called Wilking to tell him that Liebe and his wife appeared to be the principals of R & K, and that Liebe was employed by a finance company. Hampton then mailed Liebe's cover letter to Wilking. That letter did not identify Liebe's employer, but included Liebe's request that his employment remain confidential.

Wilking phoned the two members of the Wisconsin Consumer Finance Association in the Plover-Stevens Point area and was informed that Liebe worked for Thorp Finance. Wilking phoned Basil Solberg, vice-president of ITT Thorp in Wisconsin, and informed him of the flyer and Liebe's association with it. After Solberg contacted City Finance and received the flyer, Liebe was discharged on June 22, 1976, pursuant to Solberg's order.

A jury concluded that City Finance and the Better Business Bureau intentionally and improperly interfered

with the employment contract between Liebe and his employer, and awarded him pecuniary damages of $100,-000, and punitive damages of $7,000. The court subsequently directed a verdict for the defendants, and from the resulting judgment, Liebe appeals.

The basic issue is whether the trial court erred in instructing the jury in accordance with sec. 772 of the Restatement (Second) of Torts (1979), that one who intentionally causes a third person not to perform a contract by giving truthful information does not "interfere improperly" with a contractual relation. To use the language of the 1939 Restatement and the 1969 tentative draft of the Restatement, the issue is whether transmission of truthful information is "privileged." We hold that the transmission of truthful information is privileged, does not constitute improper interference with a contract, and cannot subject one to liability for tortious interference with a contract.

The trial court instructed the jury in accordance with the version of the Restatement (Second) (1979) adopted by the American Law Institute in 1977, secs. 766, 767, and 772, respectively:

One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

. . . .

Also, in determining whether a defendant's conduct is improper, you should consider the following factors. Consider the nature of the defendant's conduct, consider the defendant's motives, consider the interest of the plaintiff with which the defendant's conduct interfered, consider the interest sought to be advanced by the defendant, consider the social interest in protecting the freedom of action against the defendant and the con-

tractual interest of the plaintiff, consider the proximity or remoteness of the defendant's conduct to the interference, and consider the relations between the parties.

One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation by giving the other third person truthful information or honest advice within the scope of a request for the advice.

Adoption of sec. 772 of the Restatement (Second) (1979) was intimated in *Charolais Breeding Ranches, Ltd. v. FPC Securities Corp.*[2] The 1969 tentative draft of sec. 766 of the Restatement states that as a general rule one who intentionally induces a third person to not perform a contract with another is liable unless the conduct is privileged.[3]

The Restatement (Second) (1979) substitutes a concept of propriety, but establishes that "truthful information" or "honest advice" is privileged, that is, it cannot constitute "improper interference." Section 766 of the Restatement (Second) (1979) provides that one who "intentionally and improperly" interferes with the performance of a contract is liable.[4] In *Charolais*, this court

---

[2] 90 Wis.2d 97, 279 N.W.2d 493 (Ct. App. 1979).

[3] (1969 Tentative Draft)

§766. *Intentional Interference with Contract*

(1) One who intentionally induces or otherwise intentionally causes a third person not to perform a contract with another, other than a contract to marry, is subject to liability to the other for pecuniary loss resulting from the breach of contract.

(2) One who intentionally prevents another from performing his contract with a third person, other than a contract to marry, or makes his performance of the contract more expensive, is subject to liability to the other for pecuniary loss resulting to him.

[4] Restatement (Second) (1979)

§766. *Intentional Interference with Performance of Contract by Third Person*

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between an-

adopted sec. 766 of the Restatement (Second) of Torts (1979).

Section 772 is, in a sense, a subsection of sec. 766 in that it specifies proper and improper conduct within the meaning of sec. 766. The commentators to the Restatement (Second) (1979) explain the relationship in comment a to sec. 766.

In order for the actor to be held liable, this Section requires that his interference be improper. The factors of importance in determining this issue are stated and explained in §767, which must be closely read with this Section. Sections 768–773 deal with special situations in which the application of the factors has produced more clearly identifiable decisional patterns.[5]

The drafters of the Restatement (Second) (1979) recognize that "the law in [the area of tortious interference in contracts] has not fully congealed but is still in a formative stage."[6] Adoption of the sections clarifying application of a general rule previously adopted in this state is a logical progression which should be made barring Wisconsin precedent to the contrary.

■

Wisconsin courts have long recognized the concept of privilege in the area of tortious interference with contract. Not all intentional interference with contract is actionable. Only "one who, *without a privilege to do so,* induces or otherwise purposely causes a third person not to perform a contract with another . . . is lia-

---

other and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

[5] Restatement (Second) of Torts §766, comment a (1979).

[6] Restatement (Second) of Torts, Introductory Note to Chapter 37, Interference With Contract or Prospective Contractual Relation (1979).

ble. . . ."[7] Wisconsin courts have also intimated that transmission of truthful information is proper by stating that improper means of interfering with contracts include transmission of false information.[8]

Therefore, if the defendants come within the provisions of sec. 768 of the Restatement of Torts, they are liable to the plaintiffs only if they used improper means of inducement to terminate contracts with the plaintiffs. Such improper means within the principles of the Restatement are coercion by physical force, or fraudulent misrepresentation.[9]

Considerations of public policy support the conclusion foreshadowed by the case law. In *Augustine, supra,* the supreme court agreed with the trial court's conclusion that a phone call made by a defendant was privileged interference with contract because it was made in exercise of a "privilege to assert complaints."[10] The trial court based its conclusion on the compulsion of the

---

[7] *Mendelson v. Blatz Brewing Co.,* 9 Wis.2d 487, 491, 101 N.W.2d 805, 807 (1960) [quoting Restatement of Torts §766 (1939)]. [Emphasis added in *Mendelson.*] *See also Pure Milk Products Coop. v. National Farmers Organization,* 90 Wis.2d 781, 796, 280 N.W.2d 691, 698 (1979); *Charolais, supra* note 2 at 105, 279 N.W. 2d at 497; *Augustine v. Anti-Defamation League,* 75 Wis.2d 207, 219, 249 N.W.2d 547, 553 (1977); *St. Francis Savings & Loan Ass'n v. Hearthside Homes, Inc.,* 65 Wis.2d 74, 81, 221 N.W.2d 840, 844 (1974); *Pure Milk Products Coop. v. National Farmers Organization,* 64 Wis.2d 241, 257, 219 N.W.2d 564, 572–73 (1974); *Purtell v. Tehan,* 29 Wis.2d 631, 638, 139 N.W.2d 655, 659 (1966); and *Wisconsin Power & Light Co. v. Gerke,* 20 Wis.2d 181, 186–87, 121 N.W.2d 912, 915 (1963).

[8] We recognize the context. Section 768 of the 1969 draft created a privilege for competitors to interfere with contracts if they use proper means. The supreme court in the two *Pure Milk* opinions considered the term "improper means" in this context.

[9] *Pure Milk I,* 64 Wis.2d at 260, 219 N.W.2d at 574. *See also Pure Milk II,* 90 Wis.2d at 797, 280 N.W.2d at 698.

[10] *Augustine, supra* note 7 at 218, 249 N.W.2d at 553 [where the court applied the 1969 version of §766].

right of free speech as guaranteed by both the Wisconsin and United States Constitutions.[11] The policy choice here is narrower and is fortified by the conclusion suggested by Wisconsin precedent. Transmission of truthful information is privileged and proper.

Liebe claims that *Hartridge v. State Farm Mutual Automobile Insurance Co.,*[12] establishes that our supreme court has adopted the 1969 draft and rejected the Restatement (Second) (1979) sections concerning tortious interference with a contract. This argument is unconvincing on two counts. First, there was no dispute as to which version to use in the *Hartridge* case. The parties did not contend and the court, as evidenced by the opinion, did not consider using the Restatement (Second). Therefore, use of the 1969 draft cannot be interpreted to reject the Restatement (Second). In fact, in 1979, the court acknowledged the new version of secs. 766 and 768, with tacit approval.[13] Use of the 1969 draft in *Hartridge* indicates a tendency by the supreme court to stay current with the developments in tort law as reflected in the Restatement. Secondly, even if the 1969 version is accepted as a law of this state, the defendants' conduct would not be actionable. Section 772 of the 1969 draft recognized a privilege for transmission of truthful information.[14]

---

[11] *Id.*

[12] 86 Wis.2d 1, 271 N.W.2d 598 (1978).

[13] *Pure Milk II,* 90 Wis.2d at 796 n. 10, 280 N.W.2d at 698 n. 10.

[14] (1969 Tentative Draft)

One is privileged purposely to cause another not to perform a contract, or not to enter into or continue a contractual relation, with a third person, by giving the other

(a) truthful information without more, or

(b) honest advice within the scope of a request for advice from the other, except that if the actor is under a special duty to the third person with reference to the soundness of the advice, he is subject to liability for breach of that duty.

18

We have discovered no application by another court of the most recent version of sec. 772 in a published opinion, though numerous courts have applied the 1939 version of the privilege.[15] The 1971 observation of Professor Prosser continues to be timely:

It seems probable, although the question does not appear to have risen directly, that the mere statement of existing facts, or assembling of information in such a way that the party persuaded recognizes it as a reason for breaking the contract is not enough [to create an action for tortious interference with contract], so long as the defendant creates no added reason and exerts no other influence or pressure by his conduct.[16]

We find that the trial court's discretion of a verdict pursuant to sec. 805.14, Stats., was correct. A motion for a directed verdict should be granted only where the evidence is so clear and convincing that a reasonable

[15] *See Kecko Piping Company, Inc. v. Town of Monroe,* 172 Conn 197, 374 A.2d 179 (1977) [where the court held as privileged under §772 of the Restatement of Torts advice given to a town by an architect retained by the town to not use a subcontractor which a contractor with the town had planned to employ for the town's school project]; *Walsh v. Consolidated Freightways, Inc.,* 278 Or. 347, 563 P.2d 1205 (1977) [where the court held as privileged under §772 of the Restatement of Torts statements made by a former employer of the plaintiff to plaintiff's new employer to the effect that the plaintiff was not supervisory material]; *Walsh v. Glendale Federal Savings & Loan Ass'n,* 1 Cal. App.3d 578, 81 Cal. Rptr. 804 (Ct. App. 1969) [where the court remanded for a determination under §772 of the Restatement of Torts whether advice given was honest]. *See also O'Neill v. ARA Services, Inc.,* 457 F. Supp. 182 (E.D. Penn. 1978); *Board of Trustees v. Holso,* 584 P.2d 1009 (Wyo. 1978); *Lowell v. Mother's Cake & Cookie Co.,* 79 Cal. App.3d 13, 144 Cal. Rptr. 664 (Ct. App. 1978); and *Systems Operations v. Scientific Games Dev. Corp.,* 414 F. Supp. 750 (D.N.J. 1976).

[16] W. Prosser, *Torts* §129, at 934–35 (4th ed. 1971). [Footnote omitted.]

and impartial jury properly instructed could reach but one conclusion.[17] When a jury verdict is attacked, the reviewing court inquires only whether there is any credible evidence that under any reasonable view supports the verdict.[18]

■

The evidence permits only one conclusion. Liebe testified that he could not think of any divulgence by anyone in connection with the entire affair that was not true.[19] The record contains no evidence that any information conveyed to any of the parties involved was untrue. The information transmitted was entirely supplied by Liebe himself.

*By the Court.*—Judgment affirmed.

[17] *Bishop v. Johnson,* 36 Wis.2d 64, 68, 152 N.W.2d 887, 889 (1967).

[18] *Chille v. Howell,* 34 Wis.2d 491, 498, 149 N.W.2d 600, 604 (1967).

[19] BY MR. PHILIPP [Attorney for City Finance]:

Q. Was all the information given by you to the Better Business Bureau true and correct?

A. [Liebe] Yes, sir.

Q. Do you have any evidence of any kind that any information untrue or incorrect has been given out by anyone about you in connection with this affair?

A. I don't understand the question.

Q. Isn't everything that anyone ever said about you in connection with this entire affair perfectly true and correct?

A. As we discussed today?

Q. Yes.

A. So far, yes.

Q. Is there anything that you feel was not true as divulged by anyone in connection with this entire affair since the very beginning?

A. At this time I can think of nothing.